Ross *v.* Butler.

---

## Ross and others *vs.* Butler.

1. When the prosecution of a business, of itself lawful, in the neighborhood of a dwelling-house, renders the enjoyment of it materially uncomfortable by the smoke and cinders, or noise or offensive odors produced by such business, although not in any degree injurious to health, the carrying on such business there is a nuisance, and will be restrained by injunction.

2. A clear, unmistakable nuisance, which it is intended to commit periodically, will not be permitted on the ground that it recurs only occasionally, and continues but a short time.

3. The qualifications, that a lawful business will not be restrained for every trifling inconvenience, and that persons must not stand on extreme rights and bring actions in respect to every matter of annoyance, does not refer to the *proportion of time* for which the nuisance is continued, but only to the *degree or kind* of annoyance.

4. Matters that are an annoyance by being merely disagreeable or unsightly, as a well kept butcher shop or a green grocery near a costly dwelling-house, or any other business that attracts crowds of orderly persons, or numbers of carts and carriages, are not nuisances, even should they seriously affect the value of the property by driving away tenants, and prevent it being let to any who would pay high rents.

5. Because a certain part of a town is occupied by tradesmen and mechanics for residences, and carrying on trades which occasion some degree of noise, smoke, and cinders, and contains no elegant or costly dwellings, and is not inhabited by the wealthy and luxurious, it is not *therefore* a *proper and convenient place* for carrying on a business which renders the dwellings there uncomfortable to the owners and their families by offensive smells, smoke, cinders, or intolerable noises.

6. Whether the matter complained of constitutes a legal nuisance, must be determined by the circumstances of each case.

7. A dense smoke laden with cinders, continued for twelve hours twice in each month, falling upon and penetrating houses and premises, at distances varying from forty to two hundred feet, held to constitute a legal nuisance.

8. Equity will not interfere against a nuisance that is only contingent·

Argued on rule to show cause why an injunction should not issue.

*Mr. H. V. Speer*, for complainants.

*Mr. W. Strong*, for defendant.

THE CHANCELLOR.

The complainants in this bill are seven in number. Each owns and occupies a dwelling-house in the city of New Brunswick, on Burnet street, between New street and Oliver street. The defendant, Butler, owns what is known as the Dunham lot, on the west side of Burnet street, nearly equidistant from New street and Oliver street, which are five hundred feet apart. The defendant's lot is one hundred feet wide, by two hundred feet deep. The complainant, Agnew, resides in his own house opposite the lot of the defendant, and forty feet distant from it.

The defendant has commenced erecting a building on his lot on the line of the street, to be used as a pottery for manufacturing and burning earthenware. It is to be three stories high, and to contain two furnaces, and two kilns for burning the earthen ware. This ware he intends to burn in this building with pine wood, which emits large volumes of dense and offensive smoke loaded with cinders. These facts are alleged in the bill, and admitted, or not denied by the answer.

The complainants allege that the smoke and cinders from this pottery, will descend upon their roofs, and into their yards, penetrate their dwellings, injure their goods and furniture, and injure and impair the health and comfort of themselves and families. They allege that the defendant intends erecting his building of wood, and that the same will be very combustible, and will, by reason of the large fires, be apt in dry weather to cause and communicate fire to the neighboring buildings.

They further allege, that the defendant has had a small pottery for some years on the rear of his lot, one hundred feet

distant from Burnet street; and that this part of New Brunswick is closely and compactly built up and inhabited, and that the erection of this pottery upon Burnet street, will greatly depreciate the value of their property.

The answer denies that this part of New Brunswick is closely built up, and says that there are a number of vacant lots used for coal yards, ship yards, lumber yards, dock yards, and like purposes, on the east side of Burnet street, and between it and the canal and river, which are east of Burnet street and of the lots fronting on it. It admits that defendant intended to build the pottery of wood, but alleges that he has changed his plan in that respect, and intends to build it of brick, with a fire proof roof, and denies that there will be any unusual danger of fire from the business as he intends to carry it on there. The answer does not deny that the fires will be made with pine wood, and that large volumes of dense smoke will issue from the chimneys, or that it will fall upon and penetrate the dwellings of the complainants; but it alleges that the smoke will be made only about once in two weeks, that it will continue in large volumes less than twelve hours, and will usually escape and disappear in the night without being noticed by persons in the neighborhood.

The defendant further answers and insists, that this part of New Brunswick is inhabited principally by mechanics and laborers, many of whom use their houses and lots for business purposes, and that the complainants so use their premises; that the complainant, Agnew, is a lock and gunsmith, and carries on his business, and has forges and makes smoke on his premises; and that it is a suitable and convenient place to carry on the business of a pottery, and that his intended establishment will be no injury to the property of the complainants.

For the purposes of this application, it must be taken as established, that the defendant is about to erect upon his lot, on the west side of Burnet street, a brick building with a fire proof roof, forty feet front by sixty feet deep, and three stories high; that the building is to be placed on the line of Burnet

Ross v. Butler.

street upon the front of the lot, which is one hundred feet wide and two hundred feet deep, and has on its rear a small pottery, which has been used for several years; that the building will be constructed with two kilns, each containing one furnace for burning earthenware, having each one chimney; that it is intended when the building is finished, to use these kilns and to burn pine wood, which will cause large volumes of dense smoke to issue from the chimneys, which, with the cinders emitted with it, will fall in the yards and upon the houses in the vicinity, and penetrate the dwellings of the complainants, injure their goods and make their homes uncomfortable. These fires will not be kindled more than twice in each month, and after the first twelve hours will not emit large volumes of smoke, and in certain states of the atmosphere the smoke will be carried off without penetrating the houses of the complainants.

It must also be taken as established, that Burnet street, in this locality, and the adjoining parts of the city, are, if not continuously, thickly built up, and have been so built up for years; that these buildings have been, and now are, used for dwellings; that the complainants all occupy dwellings on Burnet street, between New and Oliver streets, and that the dwelling-house of the complainant, Agnew, is on the opposite side of Burnet street, and within forty feet of the proposed pottery; that this part of the city is used for business and mechanical purposes, and is in the neighborhood of the canal and river, and of the wharves, docks, and coal and lumber yards on it, and is not the residence of the more wealthy and luxurious inhabitants, but is occupied by business men and mechanics of moderate means.

The question is, whether this factory, and the business proposed to be carried on in it in the manner stated, will be, in that neighborhood and to these complainants, a nuisance such as this court ought to prevent and restrain.

The defendant contends that it will not be a nuisance: first, because the annoyance will not be great, and only occasional, principally in the night, when it will not be much

noticed, and will not be injurious to health; secondly, because it is in an old part of the town, now deserted by the better class of residents, and given up principally to trade and manufactures, and on which there are not many valuable buildings; and, thirdly, because it is near the canal and river, where there is an abundant supply of water to extinguish any fires which may be occasioned by the business.

The first question is, whether the large volume of dense smoke, issuing from this factory upon the premises, and penetrating the dwellings of the complainants, is such a nuisance as will be restrained by this court. The business is a lawful one; there can be no pretence that it is injurious to health; and it is a question of great practical importance in this state, where manufactures flourish, and are on the increase, whether such business can be permitted in the neighborhood of dwelling-houses, where the smoke and cinders render the houses uncomfortable to the inhabitants. Smoke, noise, or bad odors, even when not injurious to health, may render a dwelling very uncomfortable, so as to drive from it any one not compelled by poverty to remain. If the citizen has no protection against such annoyances, the comfort and value of his home can be destroyed by any one that may choose to erect such annoyance near it, and no one, not rich enough to buy all the land around him from which he could be so annoyed, could be safe.

The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over refined person. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business, carried on in his vicinity. The maxim, *sic utere tuo ut alienum non laedas*, expresses the well established doctrine of the law.

It is not necessary, to constitute a nuisance, that the matter complained of should affect the health or do injury to

material property. It is sufficient, in the language of Sir Knight Bruce, if it is " an inconvenience materially interfering with the ordinary comfort, physically, of human existence, not merely according to elegant and dainty modes and habits of living, but according to plain and sober and simple notions among the English people."

In accordance with this view, it is settled in England and in this country, that smoke, or offensive vapors, or noise, although not injurious to health, may constitute a nuisance; the only question being, whether the degree or extent is such as to interfere materially with the comfort of life. Lord Mansfield, in the case of *Rex* v. *White and Ward*, 1 *Burr.* 337, which was on an indictment for causing " a noisome, offensive, and stinking smoke;" held that " it is not necessary that the smell should be unwholesome; it is enough if it renders the enjoyment of life and property uncomfortable." In *Rex* v. *Neil*, 2 *Carr. & Payne* 488, on an indictment for carrying on the trade of a varnish maker, Abbott, Chief Justice, says: "It is not necessary that a public nuisance should be injurious to health; if there be smells offensive to the senses, that is enough, as the neighborhood has a right to fresh and pure air." In *Simpson* v. *Savage*, 1 *C. B. (N. S.)* 347, it seems to be taken for granted that smoke and soot alone, would constitute a nuisance, if the action had been brought by the tenant. Bramwell, B., in *Bamford* v. *Turnley*, 3 *Best & Smith* 81, an action for offensive smoke from a lime kiln, declares, that the defendant has done that which is actionable as being a nuisance to the plaintiff's habitation, by causing a sensible diminution of the comfortable enjoyment of it. In *Sampson* v. *Smith*, 8 *Sim.* 272, a bill to restrain the use of a steam engine, which emitted smoke and soot on complainant's premises, was sustained on demurrer. In *Walter* v. *Selfe*, 4 *De G. & Smale*, 318, the complainant sought to restrain burning a brick kiln near his dwelling-house, on account of the annoyance from the smoke and vapor, not contended to be injurious to health. Vice Chancellor Bruce says, that the complainant is entitled

LAW SCHOOL LIBRARY

to have an unpolluted and untainted atmosphere, " meaning by ' unpolluted ' and ' untainted,' not necessarily air as fresh, free, and pure as at the time of building his house the atmosphere then was, but air not rendered to an important degree less comfortable, or at least not rendered incompatible with the physical comfort of human existence; a phrase to be understood, of course, with reference to the climate and habits of England." Again : " Whether this is or will be an inconvenience to the occupier of the plaintiff's house as occupier of it, must be answered in the affirmative, though whether to the extent of being noxious to human health, animal health, or vegetable health, I do not say, or deem it necessary to intimate an opinion." In *Crump* v. *Lambert*, 3 *Eq. Cases*, (*E. L. R.*) 409, in 1867, the plaintiff asked to restrain the carrying on a forge near his premises, on account of the smoke and offensive effluvia that proceeded from a chimney fifty feet high, fifty-eight yards from plaintiff's house, and the noise by the hammers used. Lord Romilly, Master of the Rolls, says : " With respect to the question of law, I consider it to be established, by numerous decisions, that smoke unaccompanied by noise or noxious vapors, that noise alone, that offensive vapors alone, although not injurious to health, may severally constitute a nuisance to the owner of adjoining or neighboring property ; " and he granted the injunction for the smoke and noise alone.

The Supreme Court of New York in the case of *Fish* v. *Dodge*, 4 *Denio* 311, which was for a nuisance by noise and dust from a steam-boiler factory adjoining the plaintiff's dwelling-house, hold that " it is not necessary that the owner should have been driven from his dwelling; it is enough that the enjoyment of life and property has been rendered uncomfortable."

The same principle was held by the Supreme Court of New York, in *Peck* v. *Elder*, 3 *Sandf. S. C. R.* 126, and in *Howard* v. *Lee*, *Ibid.* 281, and by Chancellor Walworth in *Catlin* v. *Valentine*, 9 *Paige* 575; also by the Supreme Court of Massachusetts, in *Wesson* v. *The Washburn Iron Co.*,

13 *Allen* 95.   The Supreme Court of Maine in *Barnes* v.
*Hathorn*, 7 *Am. Law Reg.* (*N. S.*) 81, also sanction it.  In the
case of *Rhodes* v. *Dunbar*, in the Supreme Court of Pennsyl-
vania, reported in 7 *Am. Law Reg.* (*N. S.*) 412, Chief Justice
Thomson, although in delivering the opinion of the court he
says, " annoyances without damage are no ground for injunc-
tion," yet declares, that if by reason of defendants continuing to
use chips, shavings, and sawdust as fuel, the smoke, soot, and
dust complained of should continue, and be a nuisance, equity
would enjoin against the use of such fuel.

In this court, Chancellor Williamson, in *Davidson et al.* v.
*Isham*, 1 *Stockt.* 189, held that " it is not necessary that the
smell should be unwholesome, it is enough that it renders the
enjoyment of life and property uncomfortable ; " and again :
" The authorities are abundant to sustain the position that an
individual cannot erect in a densely settled portion of a city
or town, occupied by private dwellings, any kind of manu-
facturing establishments, and so use the machinery and carry
on the business as to render living in the neighborhood uncon-
fortable, either an account of the noise it occasions, or of its
smoke and offensive smells." The same jurist, in *Wolcott* v.
*Melick*, 3 *Stockt.* 207, declares, that " the court will interpose
to prevent the prosecution of a legal trade where it is carried
on in such a manner as to injure an adjoining tenant, or
to affect the air with noisome smells, gases, or smokes, in-
jurious to health, or rendering the enjoyment of life within a
neighboring dwelling-house uncomfortable." And although he
dissolved the injunction in that case because it seemed doubt-
ful from the evidence whether the smoke would annoy the
complainants, yet he declares : " As to the smoke and cinders,
if the steam engine is driven in such a way as to throw them
into and upon the dwellings so as to annoy the inmates—
against such annoyance this court will protect the complain-
ants." Chancellor Green, in *Holsman* v. *Boiling Spring Co.*,
1 *McCarter* 343, declares, that where the nuisance operates to
diminish the comfort of a dwelling-house the party injured
is entitled to protection by injunction.

Ross *v.* Butler.

. The law, then, must be regarded as settled, that when the prosecution of a business, of itself lawful, in the neighborhood of a dwelling-house, renders the enjoyment of it materially uncomfortable, by the smoke and cinders, or noise or offensive odors produced by such business, although not in any degree injurious to health, the carrying on such business there ·is a nuisance, and it will be restrained by injunction.

That large quantities of dense smoke produced by burning pine wood, with the cinders floating in it, falling upon the houses and yards in the vicinity, and penetrating the dwellings, would cause material discomfort, there can be no doubt. In this case, it is contended that as the burning will be but twice in a month, and for twelve hours only, and that principally at night, it will be so slight as not to be a material discomfort.

A nuisance of this kind may possibly occur so seldom that it will not be held to produce a material discomfort. Where the occurrence was only accidental and not produced by the regular course of business, and recurring only three or four times a year, and not intended to be again permitted, it was held not to be a proper cause for an injunction to stop a lawful business, but that the party must be put to his action damages.

But I am not aware of any authority or established principle, holding that a clear unmistakable nuisance, which it is intended to commit periodically, will be permitted because it does not exist the greater portion of the time, but only for a small portion of it. This court will not determine that a family shall have their dwelling-house made uncomfortable to live in for twelve hours, once in two weeks, or that they shall protect themselves by closing the house tightly, and remaining in doors for that time. It is surely no justification to a wrong doer, that he takes away only one-twenty-eighth of his neighbor's property, comfort, or life.

The qualifications contained in the opinions of the judges that a lawful business will not be restrained for every trifling inconvenience, and that persons must not stand on extreme rights, and bring actions in respect to every matter of annoyance, does not refer to the proportion of time for which

the nuisance is continued, but only to the degree or kind of annoyance. As if in a manufacturing town continually filled with smoke and dust, a new establishment was erected which added in some degree to it, or in a vicinity where the sounds of smiths' hammers, and the snorting of steam engines, were continually heard, another forge or steam engine was started, it would not be a nuisance if the others had by time established their right to continue. So, matters that are an annoyance by being merely disagreeable or unsightly, as a well kept butcher shop or a green grocer's stall, near a costly dwelling-house, or any business that attracts crowds of orderly persons, or numbers of carts and carriages, although very undesirable neighbors, yet are not nuisances, even should they seriously affect the value of the property by driving away tenants and prevent it being let to any who would pay high rents. These are the natural and necessary consequences of living in a city or town compactly built, and do not like dense smoke, and offensive smells, annoy every one, but only those whose taste make such matters repulsive to them.

Another question raised is, whether this business, although in some places it might be a nuisance, is not lawful here, on the ground that this is a part of the city devoted to such business, and therefore a convenient and proper place for it. The defendant is about to erect his pottery in a part of the city where there are no costly dwellings, and inhabited by persons in moderate circumstances, some of whom are mechanics, and some tradesmen, and carry on their trades and business on their own premises, but none of whom cause any annoyance in kind or degree like the smoke of such a pottery.

The doctrine that a business which of itself was a nuisance to dwellings in its vicinity, might be carried on lawfully if *in a convenient and suitable place*, has been applied to justify such business to the discomfort of the inhabitants in their own dwelling-houses, on the ground that such trade and business must be carried on somewhere, and that certain places should be considered proper for, and dedicated to, such purposes. This position has been supported by many dicta, and some authorities.

In England, it was founded on a dictum of Baron Comyns in his Digest, title, "*Action upon the case for a nuisance, (C.),*" in which he says : " So it does not lie for a reasonable use of any right, though it be to the annoyance of another; as if a butcher, brewer, &c., use his trade in a convenient place, though it be to the annoyance of his neighbor." And on this authority, the Court of Common Pleas, in the case of *Hole v. Barlow,* 4 *C. B. (N. S.)* 334, held that it was no misdirection for the judge at *Nisi Prius,* to submit it to a jury, whether the burning of brick, the nuisance there complained of, was in a proper and convenient place.

But this case was expressly overruled in *Bamford* v. *Turnley,* first in the King's Bench, and then on error in the Exchequer Chamber, 3 *Best & Smith,* 62 *C. B. (N. S.)* 65. Afterwards, the question was again raised in the case of *Tipping* v. *The St. Helen's Smelting Company,* by which the law is considered as finally settled in England. On the trial at the assizes, Justice Mellor refused to direct the jury to consider whether the place was a proper and convenient one for the business. But he instructed them " that every man is bound to use his property in such manner as not to injure the property of his neighbor, unless, by lapse of a certain period of time, he has acquired a prescriptive right so to do. But the law does not regard trifling inconveniences ; everything must be looked at from a reasonable point of view; and, therefore, in an action for nuisance by noxious vapors arising on the lands of another, the injury, to be actionable, must be such as visibly to diminish the value of the property, and the comfort and enjoyment of it." In that case, the plaintiff had bought his property after the defendant's works had been erected and were in operation. The Court of King's Bench, 4 *Best & Smith* 608, held, the direction at the trial was correct; Chief Justice Cockburn observing, that if it was wrong in any respect, the error was in favor of the defendant. On error in the Exchequer Chamber, 4 *Ibid.* 616, the judgment was confirmed; C. B. Pollock, who had dissented in overruling *Hole* v. *Barlow,* in deciding *Bamford* v. *Turnley,* con-

curring, feeling bound by the authority of that case. The defendants carried the case to the House of Lords, where the judgment of the Exchequer and the direction of Justice Mellor were unanimously approved and affirmed, without hearing the counsel for the respondents. 11 *H. L. C.* 642. (116 *E. C. L. R.* 1093.)

Lord Chancellor Westbury alone makes a distinction between " sensible personal discomfort" and " a material injury to property," saying that whether the former is a nuisance depends upon circumstances. But his instances show what kind of discomfort he intended. None of the other judges make such distinction, but simply approve the directions of Justice Mellor. The judgment of the Common Pleas, in *Carey* v. *Ledbitter,* 13 *C. B.* (*N. S.*) 470; of Vice Chancellor Stuart in *Beardmore* v. *Leadwell,* 3 *Giffard* 683; of Lord Romilly in *Crump* v. *Lambert,* and of Vice Chancellor Wood in *Cooke* v. *Forbes,* 5 *Eq. Cas.* (*E. L. R.*) 173, are in accordance with this doctrine.

This question, whether the locality of works which in most places would be a nuisance, is a justification of their erection and maintenance, has never been considered or adjudicated in New Jersey. In the case of *Butler* v. *Rogers,* 1 *Stockt.* 487, the complaint was the erection of an additional blacksmith shop on premises which had been occupied for making locomotives for twenty years, in the midst of the business part of the manufacturing town of Paterson; and the establishment of the complainant, to which injury was apprehended, was a large paper-mill which had a blacksmith shop connected with it on the same lot, and nearer to it than the projected shop of the defendants. Yet Chancellor Williamson, in refusing the injunction, although he recites these facts, does not place his opinion on that ground; and it may seem a fair inference that he did not think this ground sufficient, but he does not so declare.

I find no authority that will warrant the position that the part of a town which is occupied by tradesmen and mechanics for residences and carrying on their trades and business,

2 c*

Ross *v.* Butler.

and which contains no elegant or costly dwellings, and is not inhabited by the wealthy and luxurious, is a proper and convenient place for carrying on business which renders the dwellings there uncomfortable to the owners and their families by offensive smells, smoke, cinders, or intolerable noises, even if the inhabitants are themselves artisans, who work at trades occasioning some degree of noise, smoke, and cinders. Some parts of a town may, by lapse of time, or prescription, by the continuance of a number of factories long enough to have a right as against every one, be so dedicated to smells, smoke, noise, and dust, that an additional factory, which adds *a little* to the common evil, would not be considered at law a nuisance, or be restrained in equity.

There is no principle in law, or the reasons on which its rules are founded, which should give protection to the large comforts and enjoyments with which the wealthy and luxurious are surrounded, and fail to secure to the artisan and laborer, and their families, the fewer and more restricted comforts which they enjoy.

But the question remains, what degree or amount of discomfort is necessary to constitute a nuisance. It is clear that every thing that renders the air a little less pure, or is to any extent disagreeable, is not necessarily a nuisance. The smoke that may, in certain conditions of the atmosphere, descend from a neighbor's chimney, the fumes that may sometimes be wafted from his kitchen, though not desirable or agreeable, are not a nuisance. Between them and the dense smoke from a kiln or factory, that renders breathing difficult and painful, and smells offensive to the verge of nauseating, there is debatable ground, on which it may be difficult to fix the exact point at which the smoke or smell becomes a nuisance in the eye of the law.

The word " uncomfortable" is not precise, nor does the phrase of Vice Chancellor Bruce, " according to plain and sober and simple notions among the English people," add much to making it definite ; in fact, no precise definition can be given ; each case has to be judged of by itself.

Here the question is, whether a dense smoke laden with cinders, caused by the burning of pine wood, and continued for twelve hours, twice in each month, falling upon and penetrating the houses and premises of the complainants, at distances varying from forty to two hundred feet, would cause such injury, annoyance, and discomfort, as would constitute a legal nuisance. I am of opinion that it would. The building of the pottery would be no nuisance. It is possible that the burning of earthenware may be conducted with other fuel than pine wood, not emitting large quantities of dark, dense smoke or cinders; and equity will not interfere against a nuisance that is only contingent. The defendant may, if he sees fit, finish his building. But it was proper for the complainants, as soon as they knew of his intention to use the building for a purpose objectionable to them, to apply in equity for relief. This court would be very reluctant to interfere, if they had stood by, without objection, and allowed him to expend his money.

An injunction must issue against using the building for burning earthenware, or any manufacture with pine wood, or any fuel that may emit large quantities of dense smoke. The injunction, of course, may be removed or modified, if, upon the final hearing of the cause, it appears that the consequences, on which this decision is founded, will not follow from such use of the premises.