## MEIGS and others *vs.* LISTER and others.

1. It is not necessary for the purpose of an injunction that the odors or gases arising in the carrying on of the defendants' business should be noxious or unwholesome; it is sufficient if they be so offensive or disagreeable as to render life uncomfortable.

2. A mistake in the name of the location of the defendants' works whence the nuisance arises, cannot affect the question.

3. That a nuisance is not constant does not affect the right of a party injured thereby to protection.

4. A party's right to relief from the nuisance of the defendants' works is not affected by the allegation (were it true,) that the locality is surrounded by other nuisances, and dedicated to such purposes.

5. If there are several nuisances of the like nature surrounding the

CASES IN CHANCERY.

complainants, they must seek relief from each separately; they cannot be joined in one suit, nor need the suits proceed *pari passu*.

6. That the city of New York should have some place where it can deposit and utilize its filth, and that it has selected the place in this state where the defendants' works are carried on, will not compel the complainants to submit to the injury as a *damnum absque injuria*. What place such filth could be taken to where it would be less injurious than the place so selected, is not a question for the consideration of this court.

7. Where the fact of the nuisance is free from doubt, a delay of several months will not prevent relief by preliminary injunction.

The argument was had on rule to show cause why an injunction should not issue, upon the bill of the complainants and the answer of the defendants, and the affidavits annexed to them.

*Mr. Winfield*, for complainants.

*Mr. F. Stevens* and *Mr. T. N. McCarter*, for defendants.

THE CHANCELLOR.

The complainants are residents of the city of Bayonne. Henry Meigs, J. R. Schuyler, Solon Humphreys, and John J. Serrell, reside on the east side of and adjoining Newark bay; Rufus Story, on the north side of and adjoining Kill Von Kull. All have resided there for some years. The four first named reside within about a mile and a half of an establishment on the west side of Newark bay, upon Maple Island creek, erected and carried on by the defendants for drying bones, rendering matter, and other refuse animal matter received and imported from the city of New York and other places. They complain that a noisome, unpleasant, and sickening odor escapes from this establishment, which, when the wind blows from that direction, surrounds and enters their dwellings, pollutes the air around and in them, renders it impossible to be upon their piazzas or grounds with comfort, or in their houses when the doors or windows are open, and which nauseates and actually sickens them and their families.

Meigs *v.* Lister.

They and Rufus Story all complain that the boats of the defendants, in passing through Kill Von Kull and Newark bay with this refuse and rendering matter, pollute the air and render life uncomfortable. The complainants pray an injunction against carrying on this business of drying bones, rendering matter, and other refuse animal matter at this establishment, and against transporting it through Newark bay or Kill Von Kull, except in air-tight compartments or vessels, so that the foul odors could not escape.

The complainants are well-known citizens of the highest respectability, and in their affidavits annexed to the bill state clearly and positively that they reside in the locality stated, and respectively own their residences. That they and their families are, and have been for two years past, annoyed by foul, offensive, and sickening odors and stenches, such as make living there uncomfortable, and oblige them to leave the open grounds and piazzas, and to close the windows of their houses, and such as at times actually to nauseate and sicken them, and prevent them from taking their meals. That the air there was pure and uncorrupted before the defendants erected their establishment, and that these odors actually proceed from the establishment of the defendants and the business carried on there. The odors have been traced by men in boats across the bay to the establishment of the defendants, who found, upon going around the works, that there was no foul odor of the kind on any side, except that towards which the wind was blowing.

These facts, if not answered and contradicted in such manner as to raise a doubt about them, are sufficient to entitle the complainants to the interference of the court for their protection.

It is not necessary for that purpose that odors or gases should be noxious or unwholesome; if they are offensive and disagreeable in such manner as to render life uncomfortable, it is sufficient. This doctrine was examined into and acted upon in the cases of *Ross* v. *Butler,* 4 *C. E. Green* 294; and *Cleveland* v. *Citizens Gas Light Co.,* 5 *C. E. Green* 201.

The only question here is, whether the allegations and proofs of the complainants are denied or disproved, or serious doubt thrown over their truth, by the answer and the affidavits annexed to it.

The answer denies that the works of the defendants are on Bound creek, as stated in the bill, but states the location to be on Maple Island creek, one-third of a mile further north. A mistake in the name of a creek cannot affect the question.

The answer admits that the defendants erected their works in 1869, at the place in question, and maintained them until August 31st, 1870, when they were burned down. That these works consisted of a one-story building two hundred feet long and eighty feet wide, with a platform fifteen feet wide along the front on Maple Island creek. That the building contained a drying apparatus constructed of brick, six feet high, fifty feet wide across the whole width of the building, in which were flues for fires to heat the apparatus for drying the materials placed upon it. That they brought in barges from New York the refuse animal matter discharged from a floating rendering establishment maintained in the Hudson river by the municipal authorities of that city, or with their approbation, in which the refuse animal matter from the markets and streets in that city was gathered and boiled, and the fat and some other materials extracted and utilized. That the residue was discharged fresh from the rendering tanks into the barges of the defendants, of which one daily was brought, and continues to be brought to the establishment of the defendants. That on receiving and in transporting and using this material, disinfectants were used. That this material was landed upon the platform, stored in the building to the depth of six or eight feet, dried on the platform and on the drying apparatus, on which it was stirred and turned over by the workmen, the moisture and odors being expelled by the fires below. That an indictment was found in the Hudson County Oyer and Terminer against them for nuisance in maintaining this establishment. That two days after it was burned, a remonstrance or petition, signed by hundreds of the inhabitants

of Bayonne, was presented to them against rebuilding this establishment. That they rebuilt it, but put only a few flues in the brick drying apparatus, and these few were used but for a short time. That they have erected there a platform two hundred and fifty feet square, on which this material now is spread, to be dried by the wind and sun, being stirred and turned over by the workmen. These materials are here dried to be taken to their bone dust and fertilizer factory on the Passaic, near Newark, where they are ground and manufactured into fertilizers.

They admit that some odors arise from the process of drying, and that these, at least those from the process as at first carried on, may be offensive to some persons not accustomed to them. They deny generally that they are unhealthy or noxious, or so offensive as to make life uncomfortable, and they do not believe that they caused the nausea and sickness and discomfort alleged by the complainants.

The defendants, by their answer, do not, if the affidavits be taken literally, deny under oath a single material fact charged in the bill. The affidavit is only as to the acts of the defendants, and does not apply to the facts that offensive and noxious odors arise from their works, and are carried over to the city of Bayonne, and make the homes of the complainants uncomfortable. But if the affidavits are construed to apply to and verify every fact stated in the answer, the statements that odors arise from this business, offensive to some persons, and that the odor is of the same kind, though more intense than that from their bone factory on the Passaic, are, to a great extent, admissions of the facts on which the complainants' charges are founded. They admit almost everything except the intense offensiveness of these odors when they reach the complainants' residences; and of that the defendants have not, and do not pretend to have personal knowledge. The business of the defendants, conducting a bone factory and preparing the refuse of the streets, slaughterhouses, and markets of a great city for manufacture, is of a like kind with many other trades and business, perfectly

lawful, that are universally recognized as nuisances; and where carried on, it requires clear and positive evidence to show that they do not affect those residing in their vicinity. Drying such materials as these are admitted to be, whether by fire, the wind, or the heat of the sun, from the nature of things, cannot fail to create offensive and disgusting odors and stenches. Whether these could, at the distance of one or two miles, in any state of the wind, affect persons so as to render them uncomfortable and to nauseate and sicken them, is a fact that is not self-evident, or perhaps probable, and requires evidence to sustain it. Of this there is abundant evidence on part of the complainants, and no denial by the defendants of their own knowledge. It does not appear that they were ever on the eastern shore of Newark bay. The immense mass of this refuse animal matter carried from the rendering tanks in New York, stored in the building and piled on the platform at Newark bay, and spread out on a surface exceeding sixty thousand square feet to dry, sufficiently accounts for an amount of offensive odors and gases to be effective at the distance of two miles. So far, then, as the answer is concerned, giving the most liberal construction and effect to the affidavits, the equity of the bill is not denied. There is no denial by any one on his own knowledge, of the fact that the complainants are affected, annoyed, and made uncomfortable by disgusting, nauseating, and offensive odors, or that these odors proceed from the establishment of the defendants.

Annexed to the answer is a large number of affidavits made by strangers, for the purpose of showing that the affiants have been or lived upon the east shore of Newark bay, and have navigated the bay, and have not noticed or been seriously affected or annoyed by odors or vapors from the works of the defendants; and to show that there are divers other establishments at distances varying from three to six miles from the residences of the complainants, from which bad odors or smells may or do come.

These affidavits may show that these particular affiants may have been there when these odors were least offensive, or

Meigs *v.* Lister.

that having no interest in the matter they gave but little heed to them, or that they are persons to whom foul odors of this kind give little offence. But they do not contradict or throw any doubt upon the fact that at the times mentioned in the bill, and the affidavits annexed, the complainants and their families were annoyed, nauseated, and made uncomfortable by these odors proceeding from the defendants' works. That the nuisance is not constant, but only when the wind is in one direction, does not affect the right of the complainants to protection. They are not obliged to submit to be made uncomfortable and miserable one day in twenty, in consideration of being allowed to enjoy the other nineteen.

The position taken by counsel that the complainants were entitled to no relief from this nuisance because the locality was surrounded by other nuisances and dedicated to such purposes, has no foundation in law or in fact. If there were several nuisances of the like nature surrounding them, they must seek relief from each separately ; they cannot be joined in one suit, nor need the suits proceed *pari passu.* The poudrette factory on the Passaic and the abattoir at Communipaw, are six miles from the houses of the complainants, and if there is any affidavit that they do or can annoy the complainants, no credence can be expected for it. The other establishments are all more than three miles away, and are not of a nature to annoy the complainants at that distance.

The theory urged with much force by counsel, that it is necessary that the city of New York should have some place where it can deposit and utilize its filth, and that having selected this place, the complainants, though injured, must submit to the necessary consequence as *damnum absque injuria,* I do not think sound. I do not think it necessary that this court or this state should answer the question boldly propounded by counsel, to what place can it be taken where it will be less injurious than here. That city, without the consent of New Jersey, has no right to make any part of this state its sewer or its pest-house, even if it would do less injury than to places at like distance on the shores of Long Island or

Staten Island. There may be, or may not be, such places. In this case it does not appear. But the residents and owners of the villas and sites for villas in this most beautiful and desirable part of New Jersey, could, and beyond doubt would, afford to raise a fund, the interest of which would suffice to transport a barge laden with this offensive refuse daily outside of Sandy Hook to be dumped into the ocean, rather than have them desolated and made valueless by an establishment of the kind that this is alleged to be, if the only reason for maintaining it was that Jerseymen hold their houses by the base tenure of being obliged to provide a cess-pool, or sewer, for the impurities of the city of New York.

As before observed, I have no doubt as to the fact of the injury, of its aggravated character, or that it is caused by the works of the defendants. If there was any serious doubt, the delay of the complainants has been such that a preliminary injunction should not be granted until after a trial at law. Of the indictment they have no direct control. It should have been tried if it was under their control. But they could have each brought a civil suit, and possibly had it determined by the verdict of a jury before this. The nuisance now complained of has existed since the winter of 1871. But where the fact of the nuisance is as free from doubt as in this case, this delay should not prevent the relief by preliminary injunction.

As to the other branch of the application, the transporting their material along the Kills in boats without air-tight covers, the fact of such transportation is admitted; nor is it denied, either in the answer or affidavits, by any one having personal knowledge of the fact, that in transportation it emits an offensive, disgusting odor. It is practicable to cover the barges so nearly air-tight that no offensive odor can escape from the material transported. Whether a wooden barge, on which material has been transported, can be so cleansed that it shall not be offensive when returning, unless covered in like manner, is a doubtful question.

An injunction must issue to restrain the defendants from

Moies *v.* O'Neill.

taking to their works or establishment at Maple Island creek, or any place in its vicinity, the refuse or rendering matter from rendering tanks in the city of New York or elsewhere, or any refuse animal or rendering matter; and from drying or baking any such matter there by heat, or the sun or wind; and from carrying on any manufacture or business there that shall produce offensive odors that may be carried or wafted to the residences of the complainants, or any of them; and from transporting through the Kill Von Kull or Newark bay any such matter, except in boats or barges with air-tight covers, such as to prevent any offensive odor from escaping from them, perceptible on the shores.