THE MAYOR AND COMMON COUNCIL OF NEWARK

*v.*

THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

[Decided October 24th, 1907.]

1. Although this court may compel railroad companies whose roads cross streets at grade, and whose charters contain provisions like those of the defendant, to elevate or depress their tracks or the highways crossing them, yet the question remains whether, in the given case, the situation is such that the court should, in the exercise of its power to regulate conflicting easements, compel the change, and if their tracks are to be elevated or depressed it must be because of some peculiarity which makes them specially dangerous.

2. There is no repugnancy between the provisions of *P. L. 1903* § *26* making it the duty of every railroad company "to construct and keep in repair, good and sufficient bridges and passages over, under and across the railroad or right of way where any public or other road, street or avenue shall cross the same," and section 27 of the same statute, which provides that where any railroad shall cross any street or highway in any city it shall be either above or below the grade thereof, inasmuch as section 26 refers to railroads already laid in any street; and section 27, to railroads to be laid, and not to additional tracks.

3. If safe and convenient use will not permit of a grade crossing, then it is the duty of the railroad company to cross in some other way.

4. In determining this question, however, the court cannot start out with the assumption that all grade crossings are unsafe, for the legislature has said otherwise.

5. In a suit for an injunction, evidence examined, and *held* that defendant should not be restrained from laying one of three proposed additional tracks at grade where they cross a public highway, but that an injunction should issue restraining the defendant from laying the other two of such additional tracks.

On bill for injunction.

*Mr. Joseph Coult,* for the complainant.

*Mr. George Holmes* and *Mr. Francis Child,* for the defendant.

STEVENS, V. C.

The bill is filed, primarily, to enjoin the defendant company from laying down at grade over Plum Point lane crossing three tracks in addition to the three already there, and, secondarily, by mandatory injunction, to compel the railroad to cross Plum Point lane in some other manner than at grade.

Under the recent decision of the chancellor in the case of *Newark* v. *Erie Railroad Co., 72 N. J. Eq.* (*2 Buch.*) *447*, there can be no doubt that the court of chancery may compel railroad companies whose roads cross streets at grade, and whose charters contain provisions like those of defendant, to elevate or depress their tracks or the highways crossing them.

Under that decision the question remaining for determination is whether, in the given case, the situation is such that this court should, in the exercise of its power to regulate conflicting easements, compel the change.

Railroads whose tracks have been laid at grade are lawful structures. The legislature has not as yet seen fit to condemn them. If their tracks are to be elevated or depressed it must be because of some peculiarity which makes them especially dangerous.

Plum Point lane may be characterized as a very crooked and narrow road through the Newark meadows, of varying and uncertain width, neither graded, flagged nor paved, which has existed for over a hundred years. It was in times past used by farmers to cart salt hay. Now it is used chiefly by the employes of one or two factories. The evidence shows that on an average of one hundred pedestrians and thirty or forty wagons cross it in both directions every twenty-four hours. The lane does not appear on the commissioners' map; it is not within the lines of any contemplated street, and it crosses the railroad diagonally. It is admitted by the city that if adopted as a permanent highway its course will have to be straightened and it will have to be widened and otherwise changed.

It will cost the railroad, according to the various estimates, from $17,000 to $40,000 to construct a temporary bridge or viaduct across it. As the lane itself is not more than two feet above high water the other alternative is an elevation of the rail-

road itself. This is contemplated in the near future but not as yet determined upon. It could only be effected at very great cost.

I think that the railroad company should not, under present conditions, be required to construct a viaduct. To compel it to do so would be to apply to it a much more rigorous rule than is applied to other railroads of this state whose tracks cross country highways at grade—highways that are permanently located and much more used by the traveling public than this is. It is urged on behalf of the city that the built-up portions of Newark are gradually reaching out to this point, and it is admitted that the city must soon open one or more streets in this neighborhood. When it does so and when it determines where, in this particular locality, a street shall be laid out, quite a different problem will be presented. It is admitted by the expert called on behalf of the city that the crossing, as it is at present, is not specially dangerous.

The other question is whether the company should be enjoined from laying three additional tracks across the road. Section 26 of the General Railroad act of 1903 (*P. L. 1903 p. 659*) makes it the duty of every railroad company "to construct and keep in repair good and sufficient bridges and passages over, under and *across* the railroad or right of way where any public or other road, street or avenue shall cross the same." Section 27 provides that where any railroad *shall* cross any street or highway in any city, it shall be either above or below the grade thereof. There is no repugnancy between these provisions. Section 26 refers to railroads already laid in any street; section 27 to *railroads* to be laid and not to additional *tracks* to be laid. Two decisions seem to me to be specially applicable to this branch of the subject. *Allen* v. *Jersey City, 53 N. J. Law (24 Vr.) 522,* and *Newark* v. *Delaware, Lackawanna and Western Railroad Co., 42 N. J. Eq. (15 Stew.) 196.* In the first it was held by the late Chief-Justice Depue that the Erie Railroad Company might, notwithstanding the objection of Jersey City, lay an additional track across one of its streets at grade. In the other it was held by Vice-Chancellor Van Fleet that the Delaware, Lackawanna and Western Railroad Company should be enjoined from laying down four tracks across Spring street, in

Newark, in addition to the five tracks already there. These cases do not conflict. In the first all that appeared was that the company proposed to lay an additional track under the powers conferred by its charter. It was not shown that such track would deprive the public of the convenient use of the highway. In the latter case it was so shown. It was held that under its charter the Delaware, Lackawanna and Western Railroad Company was obliged to keep the public highways where they cross its railroad in a condition fit for safe and convenient use. If the use of the four tracks in addition to the five already there had been permitted, the crossing would have ceased to be either safe or convenient, and the joint enjoyment of their respective easements by the company and the public would have ceased. The company's use would, for all practical purposes, have been exclusive.

As in the case of the two companies mentioned, the charter of the Central Railroad Company gives the right to lay tracks at grade if public travel "shall not be impeded thereby." What this proviso means was declared forty years ago by the supreme court. *Central Railroad Co.* ads. *State, 32 N. J. Law (3 Vr.) 221.* Chief-Justice Beasley, in a passage that has often been quoted, said: "The duty prescribed is to keep at all times and under all circumstances the public highways at the point where they cross the railroad in a condition fit for safe and convenient use." If safe and convenient use will not permit of a grade crossing then it is its duty to cross in some other way. In determining this question, however, the court cannot start out with the assumption that all grade crossings are unsafe, for the legislature has said otherwise. The charter of this company, and the charters of other companies, and the General Railroad act itself, as it stands to-day, contain an implied assertion that grade crossings are or may be safe unless some peculiarity in the situation—for instance a crowded thoroughfare, with frequently passing trains, a multiplicity of tracks—makes them unsafe.

It is with these distinctions in view that I proceed to solve the question here presented.

It appears that three tracks have already been laid over the crossing. The company desires to lay one track more on the

north side and two on the south. To the north of the present tracks, and just west of the lane, is a short road known as the manufacturers' branch. On the south, and not far distant from the lane, is Brill's yard, where freight is classified for daily delivery to the various industries north of the road. The cars containing this freight are switched from the yard onto the main tracks, and from the main tracks onto the manufacturers' road. There pass along these tracks daily one hundred passenger trains and twenty freight. The speed of the passenger trains at the crossing is from forty to sixty miles an hour. The company desires the proposed northerly track for the purpose of switching freight intended for the manufacturers' branch onto it instead of onto one of the main tracks on which the swiftly-running passenger cars are constantly passing. It seems to me that it would conduce to the safety of the traveling public if a track so used were laid. Its presence would not tend to increase or impede travel over the crossing. It would rather facilitate it.

As to the two other proposed tracks on the south I do not understand, from the evidence of the company's engineer, that they are needed for the passage of trains running between Newark and New York. I gather from his evidence that their chief use would be as an adjunct to or outlet from Brill's yard. He says: "You cannot operate Brill's yard as it is now. It is a large yard and requires more facilities. You cannot separate it economically unless you have full outlets for it across Plum Point lane."

In view of the situation it would seem that the constant use of two more tracks for yard purposes involving, as it would, the passage across the highway of a greater number of slowly-moving freight cars, and the standing of some of them for a longer or a shorter time in such a position as to obstruct the view of approaching passenger trains, would, in the words of the company's charter, "impede the passage of carriages, horses and cattle" over the crossing and would tend to make its use less safe and convenient. The test at crossings, so far as the courts are concerned, is not economy of operation but the safety and convenience of those who have occasion to cross. It is said that one of the tracks is to be used in connection with the Bay Shore

Connecting Railway, but it is not very clear on the evidence why the third track already there could not be so used. It would seem that it could be unless desired exclusively for yard purposes. I think that as to these two proposed tracks the decision in the case of *Newark* v. *Delaware, Lackawanna and Western Railroad Co., supra,* applies, and also in the case of *Pennsylvania Railroad Co.* v. *Angel, 41 N. J. Eq. (14 Stew.) 316,* and that an injunction should issue to restrain laying them at grade where they cross Plum Point lane.