This is a motion to strike the bill of complaint filed in the above entitled matter.
The bill of complaint, in brief, alleges that the defendant has obtained a license from the State Aviation Commission to construct and operate an airport or airfield and is now engaged in erecting runways and hangars and generally reconstructing the premises for which said license was received for airport or airfield purposes. Complainants further allege that they live in the neighborhood or vicinity of the proposed airport and that "the normal operation of an airfield or airport on defendant's premises will deprive them of the full use and enjoyment of their premises, and that they will suffer grave and continuous annoyance and discomfort from airplanes taking off and landing, from loud noises made by said airplanes while warming up to take off, in taking off and in landing, from excessive dust particles being raised by said planes in taking off and in landing, said dust particles being carried into their respective homes and interfering with the health and comfort of themselves and their families, and from danger and reasonable apprehension of danger to themselves and their families and properties by reason of planes making imperfect landings or cracking up while in the course of taking off or landing" and that "their properties will greatly depreciate in value."
The prayer of the bill seeks relief by way of injunction against the defendant from continuing with the construction of the proposed airfield and from using the same.
The defendant has set forth a number of reasons as grounds for striking the bill of complaint. However, when reduced to a common denominator the gist of the reasons relied upon and urged on the oral and written argument is that (1) under R.S. 6:1-1 et seq., complainants have an adequate *Page 357 
remedy at law and are precluded from making this application to the Court of Chancery; (2) the defendant has obtained a license to operate an airport or airfield from the State Aviation Commission of New Jersey and that such a license cannot be attacked in this proceeding.
In order to ascertain whether the complainants have an adequate remedy as provided by R.S. 6:1-1 et seq., it becomes necessary to examine the statute in detail.
R.S. 6:1-24-25 make provision for the appointment, qualification and term of the Aviation Commission and a director thereof. R.S. 6:1-29 provides, inter alia, that the Commission
"* * * shall have supervision over aeronautics within this State, including, but not by way of limitation * * * the establishment, location, maintenance, operation, size, design, repair, management and use of airports, landing fields, landing strips * * *. The Commission shall have power to promulgate and adopt any reasonable rules and regulations that may be necessary to effectuate the purposes of this act in the interest of public safety and the development of aeronautics in this State."
R.S. 6:1-31 provides as follows:
"It shall be the duty of the commission to hold public hearings on matters affecting aeronautics; to conduct investigations, inquiries and hearings concerning matters covered by the provision of this chapter."
R.S. 6:1-32 provides as follows:
"The commission may, in order to protect the public safety and the safety of those participating in aeronautical activities adopt reasonable rules, regulations and orders requiring the installation in and carriage by, aircraft, and the installation in airports, landing fields and landing strips, of safety devices and other avigation facilities consistent with the development of the art; and require obstructions which may be hazardous to avigation to be suitably marked by lights, signs or otherwise as the commission may provide. The commission shall have the right and is hereby empowered to proceed by appropriate legal or equitable action to cause any obstruction to flight in and about any airport or landing field to be abated and such obstructions are hereby declared to be hazards to human life and property, and the commission may cause the same to be removed by such orders and decrees as the court may issue in any legal or equitable proceedings instituted by the commission for that purpose." *Page 358 
 R.S. 6:1-43 provides as follows:
"It shall be unlawful, except as hereinafter provided, to use, operate or cause to be used or operated any airport, landing field, landing strip, or other avigation facility, air school or flying club, unless it, and, in the case of airports, its management, shall be licensed as provided in this chapter; and except in case of emergency no aircraft shall land upon or take off from, any airport, landing field or landing strip, not so licensed; provided, however, that neither the provisions of this chapter, nor the rules, regulations or orders issued pursuant thereto, shall apply to any airport, landing field, landing strip, or other avigation facility, or air school owned and operated by the government of the United States."
R.S. 6:1-44 provides as follows:
"The commission shall provide for the licensing of airports, airport managements, landing fields, landing strips, other avigation facilities, air schools or flying clubs by rules and regulations and orders adequate to protect the public health and safety and the safety of those participating in aeronautical activities."
R.S. 6:1-45 provides as follows:
"Any license issued pursuant to the provisions of this chapter may be modified, suspended or revoked when in the interest of public safety or the safety of those participating in aeronautical activities, the commission shall deem such action advisable, after violation of any provision of this chapter or any rule, regulation or order promulgated thereunder."
R.S. 6:1-53 provides as follows:
"Any order made by the commission may be reviewed uponcertiorari by the Supreme Court."
It is to be noted that the oft-repeated intent of the legislature investing supervision and regulation over airports was to "protect the public health and safety and the safety of those participating in aeronautical activities." It is doubtful whether the State Aviation Commission would have any authority whatsoever, upon an application for a license to construct and operate an airport, to consider the complaint of these complainants concerning the construction and operation of an airfield or airport for the reason that such operation would interfere with the ordinary comfort of their existence *Page 359 
and would be an invasion of their property rights for the reason alleged in the bill of complaint. It is not necessary for the complainants to succeed here that they demonstrate that the conduct of the defendant's business will result in damage to their health. The inquiry in such cases is whether the conduct of defendant in the operation of his business is such as would materially interfere with the ordinary comfort, physically, of human existence and whether it is an invasion of their property rights. This is a well established principle of law, of which the following cases are a few examples: Davidson v. Isham, 9 N.J. Eq. 186; Ross v. Butler, 19 N.J. Eq. 294; Cleveland v.Citizens Gas Co., 20 N.J. Eq. 201; Meigs v. Lister, 23 N.J. Eq. 199; Gilbough v. West Side Amusement Co., 64 N.J. Eq. 27;53 Atl. Rep. 289; Laird v. Atlantic Coast Sanitary Co., 73 N.J. Eq. 49; 67 Atl. Rep. 387; Kroecker v. Camden Coke Co., 82 N.J. Eq. 373; 88 Atl. Rep. 955; Benton v. Kernan, 127 N.J. Eq. 434;13 Atl. Rep. 2d 825.
The objections of the complainants to the construction and operation of the airport or airfield is, therefore, predicated not upon the danger to their safety or health alone but upon an anticipated interference with their comfort and property rights. The above referred to statute concerning the licensing and supervision of airports has no concern with such an objection and as a result the State Aviation Commission would have no authority under its legislative grant of power and authority to revoke the license already issued to defendant for the reason set forth in the complaint.
It naturally follows that if the State Aviation Commission had no authority and jurisdiction to consider an objection to the license upon the grounds here urged, the provision in the statute for a review of its action by certiorari is a nullity. Such a provision is of no avail to these complainants under the circumstances here alleged, since the State Aviation Commission had no authority to consider them in the first instance.
The foregoing does not apply to any allegation concerning the "health and safety" of complainants for which they have a remedy before the State Aviation Commission. *Page 360 
The complainants do not have an adequate remedy for protection against the creation of a nuisance under R.S. 6:1-1 et seq. The motion urged for this reason is denied.
Defendant's next argument relates particularly and specifically to the license granted to him by the State Aviation Commission, as is set forth in paragraph 7 of the bill of complaint. The legislature, in passing R.S. 6:1-1 et seq., has recognized the existence of air commerce and air navigation as an established and legal condition. It follows that the legislature, by such passage of said statute, has not only recognized such a condition of travel and commerce but also that it has recognized the necessity of regulation and control thereof, including such incidental features as the construction of airports for the protection of the public and in the interest of public welfare. The question which defendant has posed is whether the license or permit granted by the State Aviation Commission is an absolute bar to the relief here sought and whether this court is attempting a usurpation of the power and authority of the legislatively created board or commission.
It must be conceded that the defendant has the legal authority to construct and operate the airport or airfield for which he received a license. Such a license in and of itself does not authorize the maintenance of a private nuisance, even though the same be construed a legislative grant of authority to conduct this business. An act of the legislature cannot confer any right upon an individual to deprive persons of the ordinary enjoyment of their property without just compensation. This principle rests upon the express terms of the constitution which created such a prohibition. The allegations of the bill of complaint concerning the operation of the airport, if properly sustained by proof, might create such an illegal interference with the use and enjoyment of the complainants' property as to amount to an illegal taking.
There are a number of cases in this state involving existing and prospective nuisances where this court has been called upon to protect against an existing or threatened nuisance, even though the business from which they arose was a legal undertaking. In such instances it has been held that this *Page 361 
principle applied not only to the actual taking of possession of property but also to the destruction or injury of property by the maintenance of a nuisance.
The following cases are instances of the foregoing: InPennsylvania Railroad Co. v. Angel, 41 N.J. Eq. 316;7 Atl. Rep. 432, the court said:
"But, secondly, an act of the legislature cannot confer upon individuals or private corporations, acting primarily for their own profit, although for public benefit as well, any right to deprive persons of the ordinary enjoyment of their property, except upon condition that just compensation be first made to the owners. This principle rests upon the express terms of the constitution. In declaring that private property shall not be taken without recompense, that instrument secures to owners, not only the possession of property, but also those rights which render possession valuable. Whether you flood the farmer's fields so that they cannot be cultivated, or pollute the bleacher's stream so that his fabrics are stained, or fill one's dwelling with smells and noise so that it cannot be occupied in comfort, you equally take away the owner's property. In neither instance has the owner any less of material things than he had before, but in each case the utility of his property has been impaired by a direct invasion of the bounds of his private dominion. This is the taking of his property in a constitutional sense; of course, mere statutory authority will not avail for such an interference with private property. This doctrine has been frequently enforced in our courts."
In Wolcott v. Melick, 11 N.J. Eq. 204, the court said as follows:
"The power of the court to interfere by injunction to prevent the erection or continuance of a nuisance, which materially injures the property or person of another, is not denied. A nuisance is `anything that worketh hurt, inconvenience, or damage.' 3 Bl. Com. 213. * * * The court will interpose to prevent the prosecution of a legal trade, where it is carried on in such a manner as to injure an adjoining tenement, or to affect the air with noisome smells, gases, or smoke, injurious to health, or rendering the enjoyment *Page 362 
of life within a neighboring dwelling house uncomfortable. But in such a case the nuisance must be either in actual existence, and established by clear and satisfactory evidence — or the prosecution of the business from which the nuisance is apprehended, and the establishment of which the court is called upon to prevent, must be of a character as necessarily to produce the mischief which the court is called upon to prevent."
In Ross v. Butler, supra, the court said:
"The question is, whether this factory, and the business proposed to be carried on in it in the manner stated, will be, in that neighborhood and to these complainants, a nuisance such as this court ought to prevent and restrain."
"The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over refined person. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. The maxim, sic utere tuo utalienum non laedas, expresses the well established doctrine of the law."
See, also, Cleveland v. Citizens Gas Light Co., supra;Sayre v. Newark, 58 N.J. Eq. 136; 42 Atl. Rep. 1068; McAndrews
v. Collerd, 42 N.J. Law 189; Mayor, c., Newark v. CentralRailroad Co., 73 N.J. Eq. 469; 67 Atl. Rep. 1009; Butler v.Rogers, 9 N.J. Eq. 487; Garrett v. State, 49 N.J. Law 94;7 Atl. Rep. 29.
This same rule applies to both actual and threatened nuisances.
In Sayre v. Newark, supra, the court said:
"The rule to be applied to anticipated nuisances is the same as that applied to existing nuisances. It must be clear that the nuisance will exist in the one instance just as it must be clear that it does exist in the other. In most cases of anticipated nuisances the particular condition which it is alleged will cause a nuisance differs in some respect from any other condition which has already caused a nuisance. The *Page 363 
result to be apprehended from the conditions to come into existence can only be prejudged by theoretical opinions, and such opinions are seldom so undisputed and clear as to lead to a high degree of certainty. But as like causes produce like results, it may be regarded as certain that if a certain condition of existing affairs has produced a nuisance, the same condition if reproduced will with certainty cause a like result."
There is a distinction, however, between an injunction against the construction of a structure or facility intended to be put to a legal use because a threatened or prospective private nuisance may arise from such use, and an injunction against the use itself because it may become or constitute a private nuisance as a result of the manner of the conduct of the particular trade, occupation or business intended to be there operated. In order to sustain an action for an injunction against construction the pleadings must demonstrate that the business intended to be carried on in the structure cannot be carried on without becoming a nuisance.
In Duncan v. Hayes and Greenwood, 22 N.J. Eq. 25, the court said as follows:
"But it is equally well settled, that a court of equity will not restrain, by injunction, any lawful business, or the erection of any building or works for such business, because it is supposed or alleged that such business will be a nuisance to a dwelling house near it; it must be clear that the business will be a nuisance, and that it cannot be carried on so as not to be such. Where the building or machinery is of itself no nuisance, as in this case, the erection will generally not be stopped, but the defendants allowed to go on with it at the risk of not being permitted to use them in any way so as to cause a nuisance. As to the business itself, if it is not clearly shown that it will be a nuisance in the way it is meant to be carried on, the court will not restrain it, but will compel the complainant to wait for his protection until it is in operation, and it can be shown without doubt whether it is a nuisance or not. No lawful occupation will be restrained or interfered with, unless it will actually interfere with the comfortable enjoyment of life, and it appears beyond any reasonable *Page 364 
doubt that it will so interfere. In a doubtful case, as the injury by prohibiting the business is great and certain, and the injury to the complainant, when it may occur, can be speedily remedied by an injunction applied for after the fact of nuisance is ascertained by experiment, it is better that the defendant, after being warned of the peril, should be allowed to proceed at his own risk, until the complainant is actually injured. If the business was restrained in the first instance, we could never learn from the great teacher experience, whether the business would, in fact, be a nuisance or not."
With this guide, the bill of complaint must be examined. Although not so alleged in specific words, the gravamen of the bill is that the construction of an airport constitutes a nuisance per se. The great advances made in aviation during the past three decades have clearly demonstrated the necessity of this type of commerce. Not only have there been tremendous and, in retrospect, almost unbelievable strides made in the construction of aeroplanes during this period of time, but the modernization of airport construction has had to keep pace with the advance of aeroplane construction. The thousands of airports and airfields in their varied and diverse locations are proof that they are not nuisances per se. The argument advanced by complainants is comparable to that advanced while steam railroads were in their infancy. The legislative grant of authority to the State Aviation Commission to issue licenses as above stated is a recognition of the construction, operation and conduct of an airport as a legal business. This court should not enjoin a prospective construction where the injury apprehended from the operation of a proposed legal business is of a conflicting character to justify conflicting opinions as to whether it will ever result. If the business can be conducted without becoming a nuisance the construction should not be enjoined. As said inRoss v. Butler, supra:
"If the business was restrained in the first instance, we could never learn from the great teacher experience, whether the business would, in fact, be a nuisance or not."
In order for the complainants to succeed in their prayer for an injunction against the construction of the airport it *Page 365 
must be clear that the airport cannot be so conducted as to not be a nuisance. Only very infrequently does the Court of Chancery enjoin the construction of a building or a facility upon the anticipation that there will be a threatened prospective nuisance by the conduct of the business in such building or facility. Normally, if the business is a lawful one the defendant is permitted to complete the structure and the question of nuisance is left to await the operation of the conduct of the business therein. Equity will not normally interfere in the advance of the creation of a nuisance where the apprehended injury is doubtful or contingent (see Demarest v. Hardham, 34 N.J. Eq. 469) and especially where the anticipated or threatened injury arises from the use to which a proposed structure is to be put and not from the structure itself. In the present case it cannot be said that the structure itself, i.e., the airport, is a nuisance and is of such a nature that it cannot be put to a lawful use.
In circumstances such as here present, this court normally refuses the requested restraint against construction and permits the defendant to continue, but at his own peril, to see that the conduct of the intended business to be conducted therein not become, by its operation, a nuisance. Cleveland v. CitizensGas Light Co., supra; also cases above cited.
In spite of the fact of the legal authority to construct an airport, its actual operation may constitute a nuisance. SeeThrasher v. Atlanta, 178 Ga. 514; 99 A.L.R. 158.
In any event, since the legislature has seen fit to vest the authority of determining the propriety of locating an airport or airfield in the State Aviation Commission, this court should not interfere with the construction by way of a restraint. In Cityof Northfield v. Atlantic County Board of Freeholders, 85 N.J. Eq. 47; 95 Atl. Rep. 745, the court said:
"This legislation establishes a special tribunal to pass upon the question of appropriate location of hospitals of this nature. After an adjudication by that statutory tribunal, based on a hearing on adequate notice, that a given location is a proper location, it would seem that this court cannot properly review that question or base relief upon the claim that the location is not a proper location." *Page 366 
The allegation of the anticipated diminution of the value of the complainants' property by reason of the construction and operation of the airport is not a feared result which would move this court to intercede. In City of Northfield v. AtlanticCounty Board of Freeholders, supra, the court said:
"A person cannot be denied the right to make a lawful use of his property merely because such use is operative to injure the market value of his neighbor's property; he will not be permitted to disturb the quiet enjoyment of his neighbor's habitation by interference with the atmosphere by unreasonable noises, odors or gases; he will not be permitted to physically disturb his neighbor's property, as by backing water upon it or otherwise physically interfering with it, but the mere disturbance of market value is not regarded as an infringement of an existing right in the party damnified and cannot be made the basis of relief of this nature."
See, also, Zabriskie v. Jersey City and Bergen Railroad Co.,13 N.J. Eq. 314; Morris and Essex Railroad Co. v. Prudden,20 N.J. Eq. 530; Halsey v. Rapid Transit Street Railway Co.,47 N.J. Eq. 380; 20 Atl. Rep. 859; Morrison v. Standard OilCompany of New Jersey, 105 N.J. Eq. 104; 147 Atl. Rep. 161.
For the foregoing reasons, the motion to strike the bill of complaint, in so far as it prays for an injunction against the continuance of construction or reconstruction of the airfield, will be granted, and the motion to strike the bill of complaint, in so far as the complaint predicates its prayer for the intercession of the Court of Chancery upon the safety of the individual complainants and upon a diminution of their property value, will likewise be granted. The motion to strike the bill of complaint, in so far as said complaint contests the future operation of the airfield or airport, will be denied. Any other motions not dealt with in this opinion are denied. *Page 367