FREDERICK W. WRIGHT, Jr., PLAINTIFF-RESPONDENT, v. SIGFRIED VOGT, BUILDING INSPECTOR OF THE BOR-OUGH OF HAWORTH, THE BOARD OF ADJUSTMENT OF THE BOROUGH OF HAWORTH, AND THE BOR-OUGH OF HAWORTH, DEFENDANTS-APPELLANTS.

Argued March 5, 1951—Decided April 9, 1951.

*Mr. Walter H. Jones* argued the cause for appellants.

*Mr. Paul M. Segal*, of the bar of the District of Columbia, argued the cause for respondent. *Mr. Chauncey A. Plyley*, on the brief. *Mr. Herbert G. Black*, attorney.

The opinion of the court was delivered by

HEHER, J. The question here is whether a 60-foot mast or tower support for a radio antenna is a structure forbidden in residence districts by the local zoning ordinance.

The plaintiff is the operator of an amateur radio station in his residence No. 584 Sylvan Place, West, in the Borough of Haworth, under a license issued by the Federal Communications Commission, an agency of the United States. He is the owner of the premises, which consist of a plot 75 feet x 120 feet and a one-family house and a two-car garage. The dwelling is located in a Residence "A" district delineated in the local zoning ordinance adopted April 14, 1936. The ordinance was amended on March 12, 1940, to provide a "minimum size of plot per family area," minimum building area, and so on, and to make the restrictions and limitations governing the Class "A" residence zone applicable also to the Class "B" residence zone. In his present operation, plaintiff uses a rotary-beam antenna mounted on a short mast atop the roof of the dwelling house. This antenna, it is said, "closely resembles the ordinarily-seen television antenna." On July 28, 1949, plaintiff applied to the defendant building inspector for leave to erect in the rear of the plot "a triangular-shaped support of uniform cross section with exposed faces of 13 inches to a height of 60 feet, for the purpose of supporting plaintiff's directional rotary antenna," and thereby, it would seem, to augment the power of his transmitting and receiving facilities. The application was denied. A like petition to the board of adjustment was also denied on the ground that the proposed tower (a) was not an accessory use of residential property, and (b) exceeded the maximum height of 35 feet prescribed by the ordinance for

"buildings and structures." Plaintiff thereupon brought this proceeding in lieu of *certiorari* under *Rule* 3 :81–1, *et seq*. There was judgment reversing the determination of the board of adjustment and directing the issuance of a permit to plaintiff for the purpose indicated. Defendants' appeal from that judgment to the Appellate Division of the Superior Court came here for decision on our own motion.

Radio transmission and reception in dwelling houses within residential districts are not forbidden by the zoning ordinance, save, perhaps, as these facilities may be devoted to a "trade or commercial purpose" within the intendment of the provision barring such uses in zones of that class. So much seems to be conceded. The essential question is whether the proposed 60-foot support for the present antenna installation on the housetop would in itself infringe the zoning regulations. We are clear that it would not.

There is express provision in the ordinance for an "accessory building customarily incidental" to the residence and other uses permissible in residence zones. The word "building" is defined by the ordinance to include "structure." And the term "accessory building" is defined as "a building such as a stable, garage, playhouse, barn, or greenhouse, which is subordinate to the main building on a lot and used for purposes customarily incidental to the main building." Thus, the proposed metal shaft or tower would constitute a permissible accessory use in residential districts, if not in conflict with a provision of the ordinance limiting "buildings" constructed in residence zones to two and one-half stories and a maximum height of 35 feet, "except that this specified height shall not apply to church steeples, chimneys, or flag-poles."

As in the case of statutes, the purpose of construction of ordinances and municipal by-laws is the discovery and effectuation of the local legislative intent; and in general the inquiry is governed by the same rules as apply in the interpretation of statutes. Ordinances are to receive a reasonable construction and application, to serve the

apparent legislative purpose. The aim of judicial construction is to ascertain the sense in which the terms were employed by the legislative body. *City Affairs Committee v. Board of Commissioners of Jersey City,* 134 *N. J. L.* 180 (*E. & A.* 1946).

It is the general rule that exceptions in a legislative enactment are to be strictly but reasonably construed. *New Jersey State Board of Optometrists v. S. S. Kresge Co.,* 113 *N. J. L.* 287 (*Sup. Ct.* 1934), modified and affirmed, 115 *N. J. L.* 495 (*E. & A.* 1935). But this rule, like all canons of interpretation, yields to the intention revealed by the context. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the obvious reason and spirit of the expression. It is the settled rule that the construction may be enlarged or restrained according to the evident sense of the lawgiver. The words used, even in an exception, may be expanded or limited to effectuate the manifest reason and obvious purpose of the law. The spirit of the legislative act will prevail over the literal sense of terms. Compare *Finnegan v. State Board of Tax Appeals,* 131 *N. J. L.* 276 (*Sup. Ct.* 1944). The intention is taken or presumed according to what is consonant to reason and good discretion. *Lynch v. City of Long Branch,* 111 *N. J. L.* 148 (*Sup. Ct.* 1933). The particular words are to be made responsive to the reason of the enactment. Where the reason of the regulation is general, though the provision is special, it has a general acceptation. *Dwarris on Statutes, p.* 45. That which is reasonably implied is as much a part of the ordinance as that which is expressed. Compare *Pine v. Okzewski,* 112 *N. J. L.* 429 (*E. & A.* 1934); *Fedi v. Ryan,* 118 *N. J. L.* 516 (*Sup. Ct.* 1937); *Brandon v. Montclair,* 124 *N. J. L.* 135 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940); *Kobylarz v. Mercer,* 130 *N. J. L.* 44 (*E. & A.* 1943).

An exception may be liberally construed to serve the general legislative policy. *Choate v. Trapp,* 224 *U. S.* 665, 32 *S. Ct.* 565, 56 *L. Ed.* 941 (1912); *In Re Taft's Estate,*

110 *Vt.* 266, 4 *A. 2d* 634, 120 *A. L. R.* 1382 (1939). The legislative language is not to be given a strict or literal meaning when it is· apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the apparent legislative design. The will of the lawgiver "is to be found, not by the mechanical or formal application of words and phrases, but by the exercise of reason and judgment. * * * Scholastic strictness of definition cannot be adopted if it prevents" a "reasonable construction." *St. Paul's Church v. City of Concord,* 75 *N. H.* 420, 75 *A.* 531 (1910). Exceptions are implied to ·give effect to the general legislative intent shown by the context; they may arise by the law of reason, though not expressly mentioned. *Preston v. Browder,* 1 *Wheat.* 115, 4 *L. Ed.* 50 (1816) ; *Cram v. Chicago, B. & Q. R. Co.,* 84 *Neb.* 607, 122 *N. W.* 31; 85 *Neb.* 586, 123 *N. W.* 1045 (1909), affirmed 228 *U. S.* 70, 33 *S. Ct.* 437, 57 *L. Ed.* 734 (1913) ; *Guaranty Trust Company of N. Y. v. United States,* 304 *U. S.* 126, 58 *S. Ct.* 785, 82 *L. Ed.* 1224 (1937).

 ██ Here, it would be utterly unreasonable to hold that structures of like kind and degree are not within the exception because not within the letter. That view would violate the spirit of the exception; and disserve the true intention disclosed by the regulation as a whole. Indeed, it is apparent that radio and television antennae were not within the contemplation of ·the local lawmakers when the ordinance was adopted; and it is equally clear that they are not within the letter of the by-law when considered as an entirety. It seems reasonably clear that the words of exclusion in the exception have a generic rather than a specific connotation. Only thus can the exception be read as not unduly discriminatory in relation to the purposes to be served by zoning, assuming that aesthetic considerations alone would sustain a use restriction such as is asserted here. See, as to this, *Mansfield & Swett, Inc., v. Town of West Orange,* 120 *N. J. L.* 145 (*Sup. Ct.* 1938) ; *O'Mealia Outdoor Advertising Co. v. Rutherford,* 128 *N. J. L.* 587 (*Sup. Ct.* 1942) ; *Pfister v.*

*Clifton,* 133 *N. J. L.* 148 *(Sup. Ct.* 1945) ; *Town of Burlington v. Dunn,* 318 *Mass.* 216, 61 *N. E.* (2d) 243 (1945). The exception is to be construed in relation to the permissible accessory uses. The reason of the regulation sustains the particular structure as merely incidental to an allowable accessory use, in keeping with the spirit of the exception. Such is the evident object of the legislation. We cannot read the rule as embodying an intention the local lawgiver plainly did not have. That is an elementary limitation upon the interpretive process.

In this view, there is no occasion to consider the question of whether the local regulation of the height of antenna-supporting towers, in the exercise of the zoning power, would constitute an intrusion upon an exclusive federal jurisdiction over the channels of interstate and foreign radio transmission under the Communications Act of 1934. *Vide* 47 *U. S. C. A.* § 151 *et seq.*

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING and ACKERSON—5.

*For reversal*—Justice WACHENFELD—1.