101 N.J. Super. 334 (1968)
244 A.2d 328
NORMAN SCHANTZ AND SANDRA SCHANTZ, PLAINTIFFS, JOHN T. BROCKWELL AND ABBIE BROCKWELL, PLAINTIFFS - INTERVENORS,
v.
EDGAR L. RACHLIN, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Argued May 3, 1968.
Submitted May 16, 1968.
Decided June 5, 1968.
*335 Mr. Philip J. Blanda, Jr. for plaintiffs (Messrs. Blanda & Blanda, attorneys.)
Mr. Albert G. Besser for defendant (Messrs. Hannoch, Weisman, Stern & Besser, attorneys.)
LANE, J.S.C.
This action is before the court on a motion by the defendant for summary judgment against the plaintiffs and the plaintiffs-intervenors.
The plaintiffs, Norman and Sandra Schantz, seek to restrain the defendant from constructing and using a landing strip on his lands and to compel him to demolish the landing strip. It alleges that commencing in the fall of 1967, the defendant constructed a landing strip on his land; that the use of the landing strip is in violation of the zoning ordinance of the Township of Holmdel; that the plaintiffs' child attends a school which is directly in the landing and take-off pattern of airplanes using the landing strip; and that the use of the landing strip will do "irreparable harm and damage to the plaintiffs and to their infant son * * * *336 and further will greatly decrease and diminish in value plaintiffs' property." Paragraph 8 of the complaint states:
"As a result of the use and intended use to which the defendant has put his land, namely the construction of the air strip and the intention as announced of landing and taking off airplanes and using the premises as an airport, the life, limb, and safety of Jeffry Schantz, the infant child of the plaintiffs, has been unnecessarily placed in jeopardy and in danger by virture of there now being created unlawful and unnecessary air traffic at low altitudes over the school attended by the plaintiffs' infant child as aforesaid. As a further result unnecessary and unlawful air traffic will be created over the general vicinity of the lands and premises owned by the plaintiffs which are also in the general area and vicinity of the lands and premises of the defendant, being approximately one mile from the defendant's air strip and airport. The unlawful use by the defendant as aforesaid creates a hazard and nuisance in and about the general land area of the aforesaid two elementary schools of the Township of Holmdel and of the entire residential zone in which the aforesaid air strip and airport of the defendant is located. The acts of the defendant constitute an unlawful invasion of the property rights of the plaintiffs."
The plaintiffs-intervenors, John and Abbie Brockwell, allege that the rear of their property abuts the defendant's property, being approximately 700 feet from the airstrip. They adopt the allegations of the complaint and seek the same relief. Heretofore, the Court has denied two applications for preliminary injunctions. There are numerous affidavits before the Court as well as the depositions of the plaintiffs and the defendant.
The defendant is the owner of premises known as Hop Brook Farm on Holmdel Road in the R-40A zone of the Township of Holmdel. The property is a farm consisting of approximately 135 acres of which 100 acres are cultivated with crops. The remaining 35 acres are used for livestock, a house and outbuildings and the turf landing strip that is the subject matter of this suit. The strip was installed by cultivation and seeding in June 1967. It is a little more than 2,200 feet long with varying widths of between 150 feet and 400 feet. It runs roughly in an east-west direction bisecting the property and is between 700 and 750 feet from the *337 north and from the south property lines. The landing strip is not lighted and is intended solely for daytime use pursuant to visual flight rules. Photographs before the Court show that the construction of the strip has not changed the appearance of the defendant's property as a farm. No buildings have been constructed in connection with the strip, and there is no evidence of any intention on the part of the defendant to do more than land and take off from his property. If the plane is stored overnight, it will just be tied down. The photographs show that there are no habitations immediately east or west of the landing strip.
The landing strip has been licensed by the Division of Aeronautics, Department of Transportation, State of New Jersey. The license is limited as follows:
"This is for personal use with the following Aircraft only: Beechcraft C-33A N-5649S"
In an affidavit filed in this matter Francis R. Gerard, Director, Division of Aeronautics, states:
"In addition, I recently made my own inspection of the landing strip in question on Hop Brook Farm pursuant to the request of officials of Holmdel Township. Neither I nor my inspectors found any reason for concern nor any hazard or unsafe conditions as to people and property in the vicinity of the landing strip. I feel that the landing strip should not cause any annoyance to anyone, and of the 80 such private landing strips in this state, it is one of the safest of them."
Mr. Rachlin was licensed as a private pilot by the Federal Aviation Agency about three years ago. He has more than 650 hours of private flying experience. It is his stated intention to use the landing strip solely for his personal use and pleasure. In connection with the issuance of the license by the Division of Aeronautics, the defendant was required to demonstrate his flying proficiency and the capabilities of the aircraft to a State Inspector.
*338 The Beechcraft referred to in the license is a propeller-driven single engine, single-wing aircraft. According to the manufacturer's specifications, when the aircraft is fully loaded the take-off ground run is 880 feet, with a required total take-off run of 1,225 feet in order to clear a 50-foot obstacle. The landing ground run is 625 feet with a required total landing ground run of 1,150 feet needed to land over a 50-foot obstacle.
The main thrust of the plaintiffs and plaintiffs-intervenors is that the installation and maintenance of the landing strip violates the zoning ordinance of Holmdel Township.
Plaintiffs and plaintiffs-intervenors have moved to file an amended complaint adding a third count alleging that the use of the landing strip is a violation of the zoning ordinance and that they, under the provisions of the zoning ordinance, are entitled to bring this action to enjoin such violation. The Court is advised that the defendant will consent to the filing of such amended complaint. In view of the disposition to be made upon this motion, it is unnecessary to decide whether in fact the plaintiffs or plaintiffs-intervenors have standing to seek enforcement of the zoning ordinance. See Cahill v. Heckel, 87 N.J. Super. 201, 204-205 (Ch. Div. 1965).
Article III of the zoning ordinance provides in part as follows:
"3.1 Except as hereinafter provided:
3.1.1 No land shall hereafter be used or occupied and no building or part thereof shall hereafter be used, occupied, erected, moved or altered unless in conformity with the regulations hereinafter specified for the district in which it is located."
The zoning ordinance provides for the following uses by right in the R-40A zone:
"Following are the uses allowed * * * for residence districts.
4.1 Residence R-40A (1600), Residence and Agricultural District
4.1.1 Uses allowed by right

*339 a. One-family detached private dwelling with accessory buildings.
b. A one-family detached private dwelling containing the professional office of its resident owner or lessee with accessory buildings.
c. Churches, public and private schools, libraries, nursing homes, hospitals and accessory buildings, firehouses, historical museums and private golf courses. No private golf course shall be permitted unless the property constituting said course shall consist of at least 150 acres of land.
d. Farms in general, including truck farms, dairies, nurseries and fruit farms. Accessory buildings: incident to farms, such as tenant houses, greenhouses, buildings for housing seasonal workers for the farmer's own use, barns, packing, grading and storage buildings and buildings for the keeping of poultry and livestock, garage, or garages for the keeping of equipment and trucks used in farm operations. This section shall be construed to include the business of selling farm equipment, farm implements, farm machinery, fertilizers, and seeds of all kinds, at wholesale or retail, or both but only when said business is conducted by the owner or owners of the farm.
e. Buildings, structures and premises for use and occupancy by the Township for any municipal purpose."
In Article IX "accessory" is defined as follows:
"The term applied to a building or use which is clearly incidental or subordinate to the principal building or use and located on the same lot with such principal building or use. Any accessory building attached to a principal building is deemed to be a part of such principal building in applying the Bulk Regulations to such accessory building."
Section 4.1.1 sets forth a number of uses allowed by right in the R-40A district. It is apparent that the governing body did not intend to limit the district strictly to residential uses. For example, a property owner is permitted to carry on certain businesses in this zone. Section 4.1.1d authorizes the sale of farm equipment, farm implements, farm machinery, fertilizers and seed where the business is conducted by the owner of a farm. Although the ordinance in Section 4 refers only to accessory buildings, it must be implied that accessory uses are permitted. Borough of Northvale v. Blundo, 85 N.J. Super. 56, 59 (App. Div. 1964).
*340 Is the maintenance of the landing strip on the defendant's property for his personal use accessory to its use as a residence and farm and therefore not prohibited under the Holmdel ordinance?
In Zahn v. Newark Board of Adjustment, 45 N.J. Super. 516 (App. Div. 1957), the Court in holding that the maintenance of a garment cleaning pick-up depot in the basement of a multiple dwelling was not an accessory use stated as to what an accessory use was (pp. 521-522):
"The allowance of a primary use generally authorizes all uses normally accessory, auxiliary or incidental thereto, 8 McQuillin, Municipal Corporations (3d ed. 1950), sec. 25.125, p. 206, and `accessory use,' in turn, is defined as a use `customarily incidental to the principal use of a building,' State v. Mair, 39 N.J. Super. 18, 23 (App. Div. 1956); cf. Wright v. Vogt, 7 N.J. 1 (1951); `one customarily incident,' Dolan v. DeCapua, 16 N.J. 599, 605 (1954); `customarily incidental to the operation,' Food Corporation v. Zoning Board of Adjustment, 384 Pa. 288, 121 A.2d 94, 96 (Sup. Ct. 1956); `"customary with and incidental to" the permitted use,' Application of Emmett S. Hickman Co., 10 Terry 13, 49 Del. 13, 108 A.2d 667, 671 (Sup. Ct. 1954); `a use which is dependent on or pertains to the principal or main use,' Town of Needham v. Winslow Nurseries, 330 Mass. 95, 111 N.E.2d 453, 457, 40 A.L.R.2d 1450 (Sup. Jud. Ct. 1953), `so necessary * * * or so commonly to be expected * * * that it cannot be supposed the ordinance was intended to prevent it.' Pratt v. Building Inspector of Gloucester, 330 Mass. 344, 133 N.E.2d 816, 817 (Sup. Jud. Ct. 1953)."
It was held in City of Newark v. Daly, 85 N.J. Super. 555 (App. Div. 1964), affirmed 46 N.J. 48 (1965), that the operation of a single coin-operated milk vending machine in the basement of a high-rise apartment house did not violate a zoning ordinance which limited the use of the property in the district to multiple dwellings and hotels. In discussing accessory use, the Appellate Division stated at pp. 560-561:
"The use of the word `customarily,' when applied to `incidental,' may be helpful to establish affirmatively the existence of a use as `accessory.' But the fact that a use is not `customarily' indulged in is not conclusive. Thus, private garages are customarily used in *341 connection with residences and are deemed to be an accessory use in a residential zone. But private swimming pools also are an accessory use in a residential zone, even though very few residents in many residential areas customarily have them. In the instant case there was evidence that less than 5% of the apartment houses in the general area of Newark have milk vending machines. The small percentage may be due to various factors  doubt as to the legality of the use, the newness of the idea, or the lack of economic feasibility except in large multiple dwellings. Proof of a greater percentage would have tended to establish affirmatively that these machines were customarily incidental to apartment house operation. But the fact of a relatively small percentage of milk vending machine use in apartment houses does not per se preclude a holding that, at least in those multiple dwellings where they are in actual use, such machines are reasonably accessory, incidental and subordinate to the principal use of the residents in such dwellings."
The installation of a landing strip on the defendant's property is no less accessory to its primary use than the installation of a 60-foot tower support for a radio antenna that was held to be an accessory use in Wright v. Vogt, 7 N.J. 1 (1951).
It was made clear by the Appellate Division in Borough of Chatham v. Donaldson, 69 N.J. Super. 277 (App. Div. 1961), that a residential use includes the use of property for more than sleeping and eating. The Court stated at p. 282:
"Use by a family of a home under our customs includes more than simple use of a house and grounds for food and shelter. It also includes its use for private religious, educational, cultural and recreational advantages of the family. 1 Rathkopf, The Law of Zoning and Planning (3d ed. 1960), c. 23, pp. 56 and 57. Pursuit of a hobby is clearly customarily a part of recreational activities. As long as the pursuit thereof is not of such a nature, or to such an extent, as to impair the residential character of the neighborhood, it cannot be supposed a zoning ordinance was intended to prevent it. Two- and three-car families are commonplace today. The ordinance herein contemplates three car families; it provides for private garages in residential districts large enough to accommodate three automobiles. Sec. 207(1). The parking of one or two extra automobiles cannot be construed as an extension of this hobby or habit to such a degree as to impair the residential character of the district in which appellant resided."
*342 See also Skinner v. Zoning Bd. of Adjust. of Tp. of Cherry Hill Tp., 80 N.J. Super. 380 (App. Div. 1963).
There is no reference in the zoning ordinance to landing strips. It may very well be that the municipality could have adopted regulations concerning the use of landing strips, but in fact it has not done so. This Court cannot legislate and supply what is not in the ordinance. Cf., Jantausch v. Borough of Verona, 41 N.J. Super. 89, 103-104 (Law Div. 1956), affirmed 24 N.J. 326 (1957).
The proofs before the Court show that there are at least 80 landing strips presently licensed in New Jersey. The use of privately piloted aircraft for recreation and transportation is steadily expanding. It is perhaps true that more use is made of private aircraft as a customary and accepted means of private transportation in the southern and western parts of the country, but there is a sufficient use of such aircraft in our area so that it can be said that the installation of a landing strip for personal use is accessory to the use of property as a residence. It does not change the primary use of the premises from residential.
The plaintiffs argue that because the defendant carries on a portion of his real estate and investment business from his residence and because the aircraft will be partially used for transportation in connection with such business, the primary use of the property will be converted to a business use. Such contention is totally unrealistic. The same could be said for the average lawyer's, or for that matter the average professional man's, residence.
The Court, therefore, holds that the installation of the landing strip on the defendant's property is not a violation of the zoning ordinance of the Township of Holmdel. Summary judgment will be granted for the defendant insofar as the complaints charge a violation of the zoning ordinance.
The plaintiffs and plaintiffs-intervenors argue that the license was improvidently granted by the Division of Aeronautics. It is alleged that the defendant did not comply with Regulation 6:1-44A, VI General, B.2 of the Division *343 because there was not submitted a certificate from the appropriate municipal or county authority that the landing strip was a conforming use, or if not conforming, that a variance had been granted. The plaintiffs and plaintiffs-intervenors have failed to allege any facts in their complaints to support such attack. Additionally, the agency granting the license would be an indispensable party but has not been joined as a defendant.
Paragraph 8 of the complaint alleges that the use of the landing strip (1) will be dangerous to the public health and safety; (2) will create a hazard and nuisance "in and about the general land area of the aforesaid two elementary schools of the Township of Holmdel and of the entire residential zone in which the aforesaid airstrip and airport of the defendant is located;" and (3) will constitute an unlawful invasion of the plaintiffs' property rights resulting in a decrease in the value of their property.
The Legislature has provided that questions related to public health and safety in connection with the use of landing strips are to be determined by the Division of Aeronautics.
N.J.S. 6:1-44 provides in part as follows:
"The commission shall provide for the licensing of airports, airport managements, landing fields, landing strips, fixed base operators or other aviation facilities by rules, regulations and orders adequate to protect the public health and safety and the safety of those participating in aeronautical activities; * * *"
The Division of Aeronautics has been granted by the Legislature power to suspend or revoke any license issued when the public health or safety requires such action. N.J.S. 6:1-45 provides in part:
"Any license issued pursuant to the provisions of this chapter may be modified, suspended or revoked when in the interest of public safety or the safety of those participating in aeronautical activities, the commission shall deem such action advisable, after violation of any provision of this chapter or any rule, regulation or order promulgated thereunder. * * *"
*344 A complaint similar to the one in this action was considered in Oechsle v. Ruhl, 140 N.J. Eq. 355 (Ch. 1947). Plaintiffs in that case sought to enjoin the continued construction of a proposed airfield and the use of the airfield. The Court drew a distinction between the allegation in the complaint that the operation of the airfield would interfere with the ordinary comfort of the plaintiffs' existence and would be an invasion of their property rights on the one hand, and the allegation that their safety was endangered and there would be a diminution of the value of their property on the other hand. At the conclusion of his opinion, Vice Chancellor (now Justice) Haneman stated (140 N.J. Eq. 366):
"For the foregoing reasons, the motion to strike the bill of complaint, insofar as it prays for an injunction against the continuance of construction or reconstruction of the airfield, will be granted, and the motion to strike the bill of complaint, in so far as the complaint predicates its prayer for the intercession of the Court of Chancery upon the safety of the individual complainants and upon a diminution of their property value, will likewise be granted. The motion to strike the bill of complaint, insofar as said complaint contests the future operation of the airfield or airport, will be denied. Any other motions not dealt with in this opinion are denied."
The matter that remained was whether in operation the airfield would be a private nuisance. The Court stated at 140 N.J. Eq. 359:
"The inquiry in such cases is whether the conduct of defendant in the operation of his business is such as would materially interfere with the ordinary comfort, physically, of human existence and whether it is an invasion of their property rights."
Here the complaint and the intervenors' complaint fail to make the necessary factual allegations to sustain a judgment enjoining the use of the landing strip as a private nuisance. A complaint must do more than just give notice of a claim. It must state the essentials of a cause of action. Grobart v. Society for Establishing Useful Mfrs., 2 N.J. *345 136, 150-152 (1949). The plaintiffs and the plaintiffs-intervenors may apply by motion within 10 days for leave to file amended pleadings properly setting up a cause of action based upon private nuisance in the operation of the landing strip if such factual allegations can be made. The landing strip is not a nuisance per se. Hyde v. Somerset Air Service, 1 N.J. Super. 346, 351 (Ch. Div. 1948); Oechsle v. Ruhl, 140 N.J. Eq. 355, 364 (Ch. 1947). See Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448-449 (1959) as to the essence of a private nuisance.
It has been held that the use of the landing strip does not violate the zoning ordinance. As to all other grounds for relief alleged in the complaints (including the third count of the amended complaint), they fail to set forth a cause of action upon which relief can be granted, and as to them the complaints will be dismissed.
Judgment consented to as to form will be presented within 10 days in accordance with R.R. 4:55-1 embodying the views set forth herein.