122 N.J. Super. 208 (1972)
299 A.2d 763
JULES BOUBLIS, JOSEPH MARGETT AND HILDA MARGETT, HIS WIFE, JOSEPH ROONEY, JOHN SOTNECK, GENA VITALE, PAUL ELWOOD, DANIEL O'CONNELL AND JOSEPH PSOTA, PLAINTIFFS,
v.
GARDEN STATE FARMS, INC., THE BOARD OF COMMISSIONERS OF THE BOROUGH OF HAWTHORNE, BUILDING INSPECTOR OF THE BOROUGH OF HAWTHORNE, AND THE STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DIVISION OF AERONAUTICS, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 22, 1972.
*209 Mr. Kenneth S. Stein for plaintiffs (Messrs. Hunziker, Hunziker, Stein & Jones, attorneys).
*210 Mr. Herman Jeffer for defendant Garden State Farms, Inc. (Messrs. Jeffer, Walter, Tierney, DeKorte, Hopkinson & Vogel, attorneys).
Mr. Douglas C. Borchard, Jr. for defendants Board of Commissioners and the Building Inspector of the Borough of Hawthorne (Messrs. Evans, Hand, Allabough & Amoresano, attorneys).
Mr. Remo M. Croce for defendants State of New Jersey, Department of Transportation, Division of Aeronautics (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
ROSENBERG, J.S.C.
This proceeding originated as a complaint in lieu of prerogative writ. Plaintiffs demanded a restraining order to enjoin the defendants from proceeding with plans to build a helistop, and such other relief as was deemed just and proper under the circumstances.
The question of whether a restraining order should issue to enjoin defendants was decided in favor of defendants on May 10, 1972. This decision was followed by an agreement by the parties for final determination of all issues in the form of cross-motions for summary judgment.
Defendant Garden State Farms, Inc. is the owner of premises located in the northeast section of the Borough of Hawthorne at and adjacent to the boundary dividing the borough from the Township of Wyckoff, which boundary is also the dividing line between the Counties of Passaic and Bergen. Said property is known as Lot 4 in Block 286 and is part of a large parcel or tract of land principally located in the Township of Wyckoff and County of Bergen, on which the defendant operates an extensive dairy products business.
Defendant owns some 85 or more stores in northern New Jersey which sell milk, dairy products and related products. The source of the supplies for their stores comes from a number of plants located in New Jersey, New York and in *211 Pennsylvania. There is one in Phillipsburg, New Jersey; one in Dimock, Pennsylvania; one in Lemon, Pennsylvania; one in Scranton, Pennsylvania; one in Springville, Pennsylvania; one in Tunkhannock, Pennsylvania; one in Warwick, New York, and another in Poland, New York, so that the supplies that are brought to the main plant in Hawthorne come from various areas.
The products are extremely perishable and are subject to frequent examination and inspection by various state health agencies. This requires the people at the main plant location in Hawthorne to have constant contact with the various mentioned plants. The equipment used at these various plants is extremely sophisticated, mechanized equipment and is subject to frequent breakdown because of the high rate of production for their use. Someone has to make an inspection, someone has to make repairs and someone has to meet a board of health inspector at one of these plants. The method of modern transportation to these various plant areas has to be either by motor vehicle or by a more modern sophisticated method of transportation such as by airplane and helicopter. Of course, Garden State Farms, Inc. is using the helicopter much in the same way that you or I would be using a car. It is to facilitate the operation and management of their business. It is to be used exclusively, according to the briefs, by the personnel of Garden State Farms. It is not for public hire.
The portion of said premises which lies in the Borough of Hawthorne, known as Lot 4 in Block 286, is located at the intersection of Hopper Street and Braen Avenue and is in the I-1 Industrial Zone of the borough, as described in ordinance 1175, and has been for many years in the Industrial Zone as described in ordinance 626, revised and amended by ordinance 1175.
Plaintiffs are all neighboring residents in the general area of Braen Avenue adjacent to or nearby the property of defendant Garden State Farms, Inc. The area north of Braen Avenue and west of Hopper Street is partially within R-2 *212 Residential Zone and R-1 Residential Zone, and the area south of Braen Avenue is partially within the I-1 Industrial Zone and partially within the R-2 Residential Zone.
Defendant Garden State Farms, Inc., apparently intending to construct and maintain a landing pad suitable for use by a helicopter on a portion of Lot 4 in Block 286, submitted a statement of such intention to the board of commissioners of Hawthorne by letter dated October 6, 1971. Upon the advice of defendant Garden State Farms, Inc., and the general understanding of applicable administrative procedures, the commissioners understood and believed that an application to the Department of Transportation, Division of Aeronautics, State of New Jersey, for licensing of such helipad must be accompanied by a statement or certificate of appropriate local officials regarding either the granting of a variance, or in the event no variance is required, a statement of permission. In response to such understanding the board of commissioners did on October 6, 1971, at its regular meeting, adopt a resolution granting such permission. Thereafter, numerous objections were received from neighboring landowners, including plaintiffs, primarily directed to the safety of the proposed operation of the helipad.
The State of New Jersey, Department of Aeronautics, will conduct a public hearing as required by law in conjunction with an application for a helistop, which public hearing will be conducted in the Borough of Hawthorne before issuing the permit for the private helipad. The hearing to be held by the Department of Transportation will concern itself with the safety aspect of the use of the property in question as a private helipad.
To date no application for a building permit for the construction of such facilities has been submitted to the Borough of Hawthorne, and to the knowledge of borough officials no license or permit for the operation of the heliport has been granted by the Department of Transportation, Division of Aeronautics, nor has F.A.A. approval of such facility been granted.

*213 I
The first issue to be determined is whether the State of New Jersey has preempted the field of licensing and regulating private helistops and heliports, and if so, whether the State of New Jersey thereby excludes the ability of a municipality to zone.
Local power to regulate the location of heliports is preempted only when an act of the Legislature, fairly interpreted, is in actual conflict with the ordinance of a municipality. In State v. Pinkos, 117 N.J. Super. 104 (App. Div. 1971), it was held that
"In the absence of an intent to totally preempt the field, a municipality, acting pursuant to its delegated powers, can deal with specific local problems by expanding control in that area so long as there is no conflict with the legislative proscription. Fred v. Mayor, etc., Old Tappan, 10 N.J. 515, 521-522 (1952); Kligman v. Lautman, 98 N.J. Super. 344, 355 (App. Div. 1967), aff'd 53 N.J. 517 (1969). [at 116]
So the question arises as to whether there is an intention on the part of the State of New Jersey to totally preempt the field of regulating the location of heliports. Air transportation is no longer in a stage of adolescence. It serves all segments of our economy and society in general. The State Constitution has recognized the importance of providing facilities to accommodate the public interest in air travel. N.J. Const. (1947), Art. IV, § VI, par. 3. The legislative response may not be viewed in a different light.
The Legislature has legislated on the subject: N.J.S.A. 6:1-29, as amended by L. 1966, c. 100, § 1, effective June 14, 1966, provides as follows:
Except as otherwise specifically provided by law, the Commissioner of Conservation and Economic Development shall promote progress and education in and shall have supervision over aeronautics within this State, including, but not by way of limitation, the avigation, flight and operation of aircraft, the establishment, location, maintenance, operation, size, design, repair, management and use of airports, landing fields, landing strips, heliports and helistops, sport parachuting *214 centers, air markings and other avigational facilities, and the establishment, operation, management and equipment of fixed base operators. The commissioner may adopt and promulgate reasonable rules, regulations and orders regulating air traffic and establishing minimum standards for aircraft, pilots, fixed base operators, airports, landing fields, landing strips, heliports and helistops, sport parachuting centers, air markings and all avigational facilities within the State and establishing minimum altitudes of flight commensurate with the needs of public safety, the safety of persons operating or using aircraft and the safety of persons and property on the ground, and to develop and promote aeronautics within this State. The commissioner shall have power to promulgate and adopt any reasonable rules and regulations that may be necessary to effectuate the purposes of this act in the interest of public safety and the development of aeronautics in this State. [Italics provided]
The provisions of N.J.S.A. 6:1-44, as amended by L. 1971, c. 118, § 4, effective April 29, 1971, in pertinent part, provides:
The commissioner shall provide for the licensing of airports * * * or other avigation facilities * * * by rules, regulations and orders adequate to protect the public health and safety and the safety of those participating in aeronautical activities; * * *. [Italics provided]
However, it is not enough that the Legislature has legislated on the subject  the question is whether the Legislature intended its action to preclude the exercise of the delegated authority granted municipalities to enact zoning ordinances. Summer v. Teaneck, 53 N.J. 548 (1969).
It is this court's opinion that it is clear that the intention of the Legislature was to regulate licensing and licensing matters only. Our Supreme Court, speaking through Chief Justice Weintraub, said in Kennedy v. Newark, 29 N.J. 178 (1959):
* * * Had the Legislature intended to restrain local action, the more likely course would have been to express that purpose. Before it can be said that the police power delegated to local government must remain inert, it must be clear that the Legislature intended to occupy the field or declared a policy at war with the decision made by local government. The delegated power may not be restrained upon *215 the basis of speculation or dubious inference. The Constitution enjoins a liberal construction of legislation in favor of local authority. Article IV, § 7, par. 11. [at 187]
If comparisons are to be made with respect to the way local zoning ordinances apply to other similar fields, the natural comparison should be made to the field of aviation. The line of New Jersey cases have held that the regulation of aviation fields is within the scope of municipal zoning. See Ridgewood Air Club v. Bd. of Adj., Ridgewood, 136 N.J.L. 222 (Sup. Ct. 1947); Yoemans v. Hillsborough Tp., 135 N.J.L. 599 (Sup. Ct 1947).
For the foregoing reasons this court feels the State of New Jersey has not preempted the field of regulating helistops and heliports so as thereby to exclude the ability of municipal zoning ordinances to properly apply

II
The next issue to be determined is whether the use of the property in question requires a variance. The answer is no.
This court believes that no variance is required for the same reasons as those decided in Schantz v. Rachlin, 101 N.J. Super. 334 (Ch. Div. 1968), aff'd 104 N.J. Super. 154 (App. Div. 1969)  specifically, the use is an accessory use by definition.
The Hawthorne zoning ordinance defines an accessory use as follows:
ACCESSORY USE OR BUILDING. A subordinate use or building, the purpose of which is incidental to that of the main or principal use or building and located on the same lot.
The definition of an accessory use in the Schantz case, was quite similar to the definition in the present case. In Schantz the court held that maintenance of a landing strip on defendant's property for his personal use was accessory to its use as a residence and farm and was thus not prohibited *216 by zoning ordinances. The case developed the meaning of accessory use by citing Zahn v. Newark Board of Adjustmen, 45 N.J. Super. 516, 521-522 (App. Div. 1957):
* * * The allowance of a primary use generally authorizes all uses normally accessory, auxiliary or incidental thereto, 8 McQuillan, Municipal Corporations (3d ed. 1950), sec. 25.125, p. 206, and `accessory use', in turn, is defined as a use `customarily incidental to the principal use of a building,' State v. Mair, 39 N.J. Super. 18, 23 (App. Div. 1956); cf. Wright v. Vogt, 7 N.J. 1 (1951); `one customarily incident,' Dolan v. DeCapua, 16 N.J. 599, 605 (1954); * * * `a use which is dependent on or pertains to the principal or main use,' Town of Needham v. Winslow Nurseries, 330 Mass. 95, 111 N.E.2d 453, 40 A.L.R.2d 1450 (Sup. Jud. Ct. 1953), * * *.
The case of Shell Oil Co. v. Bd. of Adjustment, Hanover Tp., 38 N.J. 403 (1962), further holds that:
* * * Each case must be considered on its own particular facts, controlled by the particular language of the creative statute. A consideration of the opinions treating of this subject evokes the conclusion that the test to be applied to a land use in order to ascertain whether it qualifies for an immunity from local zoning regulations is whether it is reasonably accessorial or incidental to the primary purpose sought to be advanced by the creation of the separate authority. [at 409]
Using Schantz, supra, as a guideline it is clear that the intended use of the heliport in the present case is accessory to the current use of the land as the main plant of a large group of widely scattered dairies. To emphasize this, it is noted that the use of the heliport in this case involves property located in an I-1 Industrial Zone, whereas the landing strip in the Schantz, was to be used on land zoned as residential. The only purpose of the proposed heliport is for those purposes connected with the operation of Garden State Farms' business.
The applicable section of the Hawthorne zoning ordinance regulating uses in Industrial Zones makes no mention of accessory uses; however, the law is clear that such accessory uses are impliedly permitted even where not expressly described or allowed. Northvale v. Blundo, 85 N.J. *217 Super. 56, 59 (App. Div. 1964); Zahn v. Newark Board of Adjustment, supra; Newark v. Daly, 85 N.J. Super. 555, 560 (App. Div. 1964), aff'd 46 N.J. 48 (1965).
Canvassing the Hawthorne zoning ordinance I find that Section XIV-B, "Prohibited Uses," does not specifically list aviation or heliport facilities. Plaintiffs argue that such a use is prohibited according to item 52 of Section XIV-B, which states: "Any other trade or use that is noxious or offensive by reason of the emission of odor, dust, smoke, gas or noise * * *."
However, this argument has no merit because it appears that plaintiffs are alleging that the proposed use, possibly containing these objectionable features will constitute a nuisance. And the settled law in New Jersey holds that the use of one's land cannnot be a nuisance per se; and specifically, the operation of an airport has been held not to be a nuisance per se. Oechsle v. Ruhl, 140 N.J. Eq. 355 (Ch. Div. 1947); Schantz v. Rachlin, supra.
Based on the foregoing reasons that the use of said premises as a helistop would be a permitted accessory use, and there being no specific prohibition of such use in the zoning ordinance, a variance is not required.

III
The final issue to be determined is whether the proposed use requires the issuance of a building permit, site plan approval or certificate of occupancy.
Section XIV-D of the Hawthorne zoning ordinance provides as follows:
Site Plan Approval  Review and approval by the Planning Board of a site plan, in accordance with Section XX, Paragraph C, shall be required prior to issuance of any building permit or certificate of occupancy for uses permitted under this Section.
It is clear that this and other related sections, relate to the contemplation of some construction. However, the factual *218 situation presented here as to the use of the property in question requires absolutely no construction in the physical sense. Defendant Garden State Farms seeks permission to use the property to land helicopters.
The State of New Jersey, Department of Transportation, requires application for license to operate a heliport. If the Department of Transportation, upon reviewing said application by Garden State Farms, requires that some kind of a structure be placed on said property, then this decision on this particular issue should be reviewed again.
There being no indication at the present time that a structure of any kind will be placed on the property in question, site plan approval, building permit or certificate of occupancy are not required.