226 N.J. Super. 649 (1988)
545 A.2d 253
LAUREL LAWN CEMETERY ASSOCIATION, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF UPPER DEERFIELD, DEFENDANT.
Superior Court of New Jersey, Law Division Cumberland County.
Decided January 19, 1988.
*650 Allan H. Harbert for plaintiff.
Eleanor B. Hanford for defendant. (Theodore Henry Ritter, Attorney)
PORRECA, J.S.C.
Laurel Lawn Cemetery Association (Laurel Lawn) owns and maintains a cemetery in Upper Deerfield Township (Township). It pre-existed the zoning ordinance and is located in an R-2 Residential Zone in which a cemetery is not a permitted use. Laurel Lawn is, therefore, a non-conforming use. Cemeteries are permitted in the Township, but only in R-1 Residential and A-1 Agricultural Zones. Laurel Lawn sought to build a crematorium in the cemetery in the R-2 Residential Zone and therefore applied to the Township for a conditional use permit. Crematoriums are not specifically provided for in any zone in the Township. Funeral homes are permitted in R-2 Residential Zones.
Laurel Lawn's theory is that a crematory is an accessory or incidental use to a cemetery and therefore, subject to reasonable site plan requirements and construction code mandates, it may, as a matter of right, construct a crematory in the cemetery. *651 The Township disagrees, contending that a crematory is a primary use, not incidental to the non-conforming cemetery use.
Persuasive, if not compelling arguments have been made by both litigants for their respective points of view. Certainly, a crematory can exist apart from and independent of a cemetery. Certainly, a crematory is not essential to the operation of a cemetery. When one thinks of a cemetery one may not necessarily or ordinarily think of a crematory. However, these posits are not the test of what is an incidental use. In fact, what any one person or group of persons may conjure up in their minds when cemetery or crematory is mentioned, is not controlling and may be irrelevant unless that person or group happens to be a court or the Legislature. It is to those institutions that we must turn for guidance, and whether the scheme discovered comports with our individual proclivities is unimportant.
Reference to court decisions is not particularly helpful. The decisions do not provide any broad definitive guideline, but rather turn on the peculiar and particular facts of the case under consideration. A heliport has been held to be incidential to a dairy business. Boublis v. Garden State Farms, Inc., 122 N.J. Super. 208 (Law Div. 1972) and also a construction business, State v. P.T. & L. Construction Company, Inc., 77 N.J. 20 (1978). An asphalt plant was held to be incidental to operating a rock quarry. Booth v. Bd. of Adj., Rockaway Tp., 50 N.J. 302 (1967). The point is that there is no clear direction to be gleaned from the courts in this particular case. There are some general principles to be garnered: (1) It is not essential to the concept of "customarily incident" that a majority or even a substantial percentage of a given type of principal use should in fact be accompanied by the mooted accessory use; (2) courts have classified uses as accessory uses even though they were not strictly "necessary" to the fulfillment *652 of the permitted use, State v. P.T. & L. Construction Company, Inc.
While the judicial body of law is neither dispositive nor generally helpful, the Legislature does provide direction and affords us insight helpful in forging a solution. A reading of the "New Jersey Cemetery Act" irrefutably leads one to the conclusion that in the Legislative "mind" a crematory is clearly associated with, incidental to and closely aligned with the operation of a cemetery. Since crematories and cemeteries deal directly with the disposition of human remains, the Legislature treats them coincidentally.
N.J.S.A. 8A:1-2 defines cemetery and includes in the definition: "... a crematory located in a cemetery...."
N.J.S.A. 8A:3-2 requires a certificate of authority issued by the New Jersey Cemetery Board before any cemetery company: "... can engage in any function or operation of a cemetery or crematory...."
N.J.S.A 8A:3-13 delineates the purposes for which a cemetery company may be organized and paragraph c. states: "the procurement and operation of a crematory."
N.J.S.A. 8A:4-3 requires establishment of a trust fund by cemetery companies except for: "... any cemetery company operating a crematory physically separated from a cemetery...."
N.J.S.A. 8A:5-2 b. specifically authorizes the governing body of every cemetery company to: "... build and operate a public mausoleum or crematorium."
N.J.S.A. 8A:5-3 prohibits a cemetery company from manufacturing or selling monuments, vaults and private mausoleums. It prohibits the conduct of funeral homes or mortuary science but excepts from these prohibitions crematoriums under certain circumstances.
*653 N.J.S.A. 8A:5-19 governs when a cemetery company may inter or cremate and provides immunity for interment or cremation under certain circumstances.
Until recently, cremation was not generally accepted, favored or utilized, which may explain why there is no well lit path of stare decisis dealing with the subject, why the Township zoning ordinance is silent on the subject, why many Title 8A amendments deal with the subject and why crematories are not situate and functioning in most cemeteries.
The practice appears to be gaining acceptance and more widespread use as an alternative to traditional interment. Since that is exactly what it is, an alternative to interment, then the Legislative bent toward equating cremation with a cemetery use seems logical, practical and utilitarian, not disruptive, noxious or alien to a cemetery.
The Zoning Board denial is reversed and the case remanded so that the Board may impose reasonable conditions upon the location and construction of the crematorium within the Laurel Lawn Cemetery.